IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHELE ALSBROOK, LATANYA BROWNLEE, BUFFY CLEVEN (BELL), BARBARA COLLINS, EDWARD EVANS, WENDY HOLLEY, KENDRA LLOYD, CALEB MARTIN, MERCEDES TREADWAY, KENDRA WARREN, and DARREN WILLIAMS, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   No. 2:19-cv-02583 ) |
| CONCORDE CAREER COLLEGES, INC., | ) ) ) |
| Defendant. | ) ) |

**ORDER**

Before the Court is Defendant Concorde Career Colleges, Inc.'s ("Concorde") January 9, 2020 Motion to Dismiss for Failure to State a Claim (the "Motion to Dismiss"). (ECF No. 30.) On March 20, 2020, Plaintiffs responded. (ECF No. 41.) On April 10, 2020, Concorde replied. (ECF No. 45.)

For the following reasons, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I.   Background**

For purposes of the Motion to Dismiss, the facts are taken from the Amended Complaint.

Concorde is a career college that offers healthcare-related programs and degrees.  (ECF No. 23 ¶ 17.)  Concorde offers a Health Information Management ("HIM") program of study through which students can obtain an associate's degree in HIM.  (Id. ¶ 20.)  Plaintiffs are former students in the HIM program.  (Id. ¶ 22.)  Each Plaintiff graduated from the HIM program with an associate's degree.  (Id. ¶¶ 60, 64.)

Plaintiffs were enrolled in, and graduated from, the HIM program at different times between 2013 and 2016.  They fall into four groups:

| Plaintiff Group | Enrollment Date | Graduation Date |
|---|---|---|
| Group 1 (Plaintiffs Collins, Evans, Warren, and Treadway) | March 1, 2013 | June 17, 2014 |
| Group 2 (Plaintiffs Bell, Brownlee, and Williams) | October 1, 2013 | February 18, 2015 |
| Group 3 (Plaintiffs Alsbrook and Martin) | June 1, 2014 | October 31, 2015 |
| Group 4 (Plaintiffs Holley and Lloyd) | May 1, 2015 | August 23, 2016 |

(Id. ¶¶ 34, 39, 46, 51.)[1]

---

[1] The Amended Complaint alleges that the members of Group 4 were enrolled in the HIM program until October 23, 2017.  (ECF No. 23

Plaintiffs allege that, before, while, and after they were Concorde students, Concorde repeatedly misrepresented the present or future accreditation status of the HIM program with the Commission on Accreditation for Health Informatics and Information Management Education ("CAHIIM").[2]   (See id. ¶¶ 23-77.)   For an HIM degree to be of practical use, the holder of the degree must be able to sit for, and pass, the Registered Health Information Technician ("RHIT") exam administered by the American Health Information Management Association.   (Id. ¶¶ 23, 28.)   To sit for the RHIT exam, a candidate must have a degree from an accredited HIM program. (Id. ¶ 29.)   Individuals who pass the RHIT exam receive an RHIT certification.   (Id. ¶ 23.)

Concorde's HIM program was not accredited when Plaintiffs enrolled.   (Id. ¶ 27.)   It was not accredited when Plaintiffs graduated.   (Id. ¶ 60.)   Plaintiffs allege that Concorde made

¶ 51.)   That is clearly erroneous.   The Amended Complaint elsewhere pleads that all Plaintiffs received post-graduation communications from Concorde in June 2017.   (Id. ¶¶ 64, 66.)   In the Motion to Dismiss, Concorde represents that the members of Group 4 graduated on August 23, 2016.   (ECF No. 30-1 at 4.)   Concorde attaches the diplomas for the members of Group 4, which corroborate that representation.   (See ECF No. 33.)   Plaintiffs do not dispute that the members of Group 4 graduated on August 23, 2016.   (See generally ECF No. 41.)

[2] There is a difference between institutional accreditation and programmatic accreditation.   Concorde is accredited as an educational institution.   (See ECF No. 23 ¶ 64.)   Separately, certain of Concorde's programs of study are programmatically accredited on a program-by-program basis.   (See id.)   Throughout this Order, references to "accreditation" are to the programmatic accreditation of the HIM program with CAHIIM.

many misrepresentations about the accreditation status of the HIM program. They allege that, both before and during their enrollment, Concorde repeatedly represented that the HIM program was currently accredited or would be by the time Plaintiffs graduated, and that Plaintiffs would graduate with the ability to sit for the RHIT exam. (See id. ¶¶ 23, 26, 31, 33, 35-36, 38, 41, 43-45, 47, 49, 52, 56-57.) They allege that, after they graduated, Concorde represented that the HIM program would be accredited "soon." (See id. ¶¶ 61, 68.)

Plaintiffs also allege that Concorde made misrepresentations about two topics related to, but distinct from, accreditation status. First, they allege that, after graduation, Concorde represented that, once the HIM program became accredited, Concorde would offer remedial training, at no charge, to prepare Plaintiffs to successfully sit for the RHIT exam. (See id. ¶¶ 64, 66.) Second, they allege that, after graduation, Concorde represented that, "should the [HIM] program not obtain accreditation by September 1, 2018," Concorde would issue Plaintiffs "a full refund of tuition and other fees, and any applicable grants." (Id. ¶ 64.)

Concorde's HIM program did not become accredited by September 1, 2018. (Id. ¶ 69.) After September 1, 2018, Plaintiffs asked that Concorde refund their tuition. (Id.

4

¶ 70.)   Concorde refused to refund tuition to any of the Plaintiffs.  (Id.)

The HIM program became accredited on or around December 31, 2018.  (Id. ¶ 74.)  Before December 31, 2018, Plaintiffs were not eligible to sit for the RHIT exam or to obtain an RHIT certification.  (Id. ¶¶ 64, 74.)  After December 31, 2018, Concorde offered Plaintiffs a remedial training program designed to prepare them to sit for the RHIT exam.  (Id. ¶ 77.)  However, the remedial program offered was insufficient to prepare Plaintiffs to sit successfully for the RHIT exam and conflicted with some Plaintiffs' employment or educational schedules.  (Id. ¶¶ 77-78.)

On August 29, 2019, Plaintiffs filed the Complaint.  (ECF No. 1.)  On November 25, 2019, Plaintiffs filed the Amended Complaint.  (ECF No. 23.)  In the Amended Complaint, Plaintiffs assert seven claims against Concorde: (1) fraud and fraudulent inducement to contract (the "fraud claim"); (2) unfair and deceptive acts or practices in violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 et seq. (the "TCPA claim"); (3) negligent misrepresentation; (4) promissory estoppel; (5) breach of contract; (6) negligence; and (7) quasi-contract and/or unjust enrichment (the "unjust enrichment claim").  (See id. ¶¶ 91-126.)  Plaintiffs seek compensatory damages for: (1) the cost of their

5

tuition and expenses; (2) the interest they incurred on their student loans; (3) the value of the time they spent participating in the HIM program; (4) the value of lost employment opportunities; and (5) the value of lost earnings. (See id. ¶ 128(a)-(e).)   Plaintiffs also seek treble damages for the TCPA claim; punitive damages; and attorney's fees and suit expenses.   (Id. ¶ 128(f)-(h).)

On January 9, 2019, Concorde filed the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiffs have failed to state a claim upon which relief can be granted.   (ECF No. 30.)

## II.   Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332.   Plaintiffs Alsbrook, Brownlee, Collins, Evans, Holley, Lloyd, Treadway, Warren, and Williams are resident citizens of Tennessee.   (ECF No. 23 ¶¶ 1-2, 4-7, 9-11.)   Plaintiffs Bell and Martin are resident citizens of Mississippi.   (Id. ¶¶ 3, 8.)   Concorde is a Delaware corporation with its principal place of business in Mission, Kansas.   (Id. ¶ 12.)   The parties are completely diverse.

The amount-in-controversy requirement is satisfied. Plaintiffs allege that the amount in controversy exceeds $75,000.   (Id. ¶ 13.)   "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith."   St.

Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).

State substantive law applies to state law claims in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume that Tennessee substantive law applies to Plaintiffs' claims. (See ECF No. 30-1 at 6-19; ECF No. 41 at 8-28.) The Court will apply Tennessee substantive law.

**III. Standard of Review**

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009). "If the district court does consider evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment." Id. (quotation marks and citation omitted). The Sixth Circuit generally takes "a liberal view of what

8

matters fall within the pleadings for purposes of" a motion to dismiss. Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001). Documents attached to a motion to dismiss may be considered part of the pleadings if they are "referred to in a complaint and central to the claim." Id. (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)); see also Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

Some of Plaintiffs' claims allege fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires that the circumstances of [] fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." Williams v. Duke Energy Int'l, Inc., 681 F.3d 788, 803 (6th Cir. 2012) (quoting Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir. 1988)). To meet that standard, "[a] complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when

the statements were made, and (4) explain why the statements were fraudulent.'" Dougherty v. Esperion Therapeutics, Inc., 905 F.3d 971, 978 (6th Cir. 2018) (quoting Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc., 583 F.3d 935, 942 (6th Cir. 2009)).

## IV.  Analysis

Concorde moves to dismiss each of Plaintiffs' seven claims.  (ECF No. 30.)  Concorde argues that each of Plaintiffs' claims is time-barred.  (ECF No. 30-1 at 6-11.) Concorde also argues that six of Plaintiffs' seven claims should be dismissed for independent reasons unrelated to timeliness.  (Id. at 11-19.)

### A.  Timeliness

The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1).  A plaintiff typically need not anticipate or negate an affirmative defense to state a valid claim.  See Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012).  "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations."  Id.  However, when the allegations in the complaint "affirmatively show that [a] claim is time-barred," dismissal under Rule 12(b)(6) may be appropriate.  Id. (citing Jones v. Bock, 549 U.S. 199, 215

10

(2007)).  If it is clear from the face of the complaint that the statute of limitations has run, the burden shifts to the plaintiff to "affirmatively plead an exception to the limitations statute." Reid v. Baker, 499 F. App'x 520, 526 (6th Cir. 2012) (citing Auslender v. Energy Mgmt. Corp., 832 F.2d 354, 356 (6th Cir. 1987)).

Concorde argues that each of Plaintiffs' claims is time-barred. (ECF No. 30-1 at 6-11.) Plaintiffs' claims fall into three groups for statute-of-limitations purposes: (1) the contract claims (breach of contract and unjust enrichment); (2) the fraud and tort claims (fraud, negligent misrepresentation, promissory estoppel, and negligence); and (3) the TCPA claim. Plaintiffs argue that none of their claims is time-barred on the face of the Amended Complaint and that, even if any are, tolling exceptions save them. (ECF No. 41 at 8-18.)

### 1.  Contract Claims

The parties dispute which statute of limitations governs Plaintiffs' breach-of-contract and unjust enrichment claims. Concorde argues that the statute governing these claims is Tenn. Code Ann. § 28-3-105(1), which provides a three-year limitations period for "[a]ctions for injuries to personal or real property." (ECF No. 30-1 at 9-11; ECF No. 45 at 14-17.) Plaintiffs argue that the statute governing these claims is Tenn. Code Ann. § 28-3-109(a)(3), which provides a six-year

limitations period for "[a]ctions on contracts not otherwise expressly provided for."  (ECF No. 41 at 14-18.)

In Tennessee, "the applicable statute of limitations is determined according to the gravamen of the complaint rather than its designation as an action for tort or contract." Keller v. Colgems-EMI Music, Inc., 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996) (citing Pera v. Kroger, 674 S.W.2d 715, 719 (Tenn. 1984)).  The "gravamen" of a complaint is its "substantial point," "real purpose," or "object."  Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 457 (Tenn. 2012).  The "gravamen is not dependent upon the . . . form litigants ascribe to an action." Benz-Elliott v. Barrett Enters., LP, 456 S.W.3d 140, 148 (Tenn. 2015) (quotation marks and citations omitted).  Where a plaintiff asserts multiple claims, "courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety." Id. at 149.

Courts use a "two-step approach . . . when ascertaining the gravamen of a claim for the purpose of choosing the applicable statute of limitations." Id. at 151.  "[A] court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." Id.  "This analysis is necessarily fact-intensive and requires a careful examination of the allegations of the complaint as to

each claim for the types of injuries asserted and damages sought." Id.

### a.    Breach of Contract

In their breach-of-contract claim, Plaintiffs allege that "Concorde contractually agreed, among other things, to provide Plaintiffs a programmatically accredited degree upon graduation, within a reasonable time after graduation, or, in no event, later than September 1, 2018." (ECF No. 23 ¶ 110.) Plaintiffs allege that Concorde breached that "contract" by failing to: (1) provide Plaintiffs with an accredited degree "upon graduation, within a reasonable time after graduation, or, in no event, later than September 1, 2018"; (2) "provide an adequate remedial program to enable students to meaningfully prepare for the RHIT exam"; and (3) "reimburse students for their tuition as agreed upon." (Id. ¶ 111.) As discussed infra, the Amended Complaint pleads that Concorde breached two different contracts: (1) an oral pre-enrollment agreement to provide an accredited degree in exchange for Plaintiffs enrolling in the HIM program, and (2) a written post-graduation agreement to provide remedial training once the HIM program was accredited, and to refund tuition if accreditation was not obtained by September 1, 2018, in exchange for Plaintiffs' signing post-graduation accreditation disclosures. See section IV.B.3.

Concorde argues that the gravamen of Plaintiffs' breach-of-contract claim lies in tort.  Concorde argues that the claim "is rooted in the same alleged fraudulent misrepresentations that form the basis of [Plaintiffs' fraud] claims" and that the damages Plaintiffs seek are "damages to property."  (ECF No. 30-1 at 9-11; ECF No. 45 at 14-16.)  Concorde argues that the breach-of-contract claim is governed by Tenn. Code Ann. § 28-3-105(1)'s three-year limitations period for "[a]ctions for injuries to personal or real property."  (Id.)

Plaintiffs argue that the gravamen of their breach-of-contract claim lies in contract.  They argue that they have "specifically alleged [Concorde] breached the parties' contract by not providing an accredited degree by a certain time, failing to provide an adequate refresher course, and refusing to reimburse Plaintiffs' tuition" and that they "seek to recover damages that resulted or flow from those breaches." (ECF No. 41 at 14-18.)  They argue that the breach-of-contract claim is governed by Tenn. Code Ann. § 28-3-109(a)(3)'s six-year limitations period for "[a]ctions on contracts not otherwise expressly provided for."  (Id.)

The first consideration is the legal basis of Plaintiffs' breach-of-contract claim.  Benz-Elliott, 456 S.W.3d at 151. That basis can be tortious or contractual.  See id. at 149-51. "[S]uits for fraud, deceit or conspiracy, whether they arise

14

incident to a contract or not[,] are actions in tort and must be governed by the applicable tort statute of limitations." Harvest Corp. v. Ernst & Whinney, 610 S.W.2d 727, 729-30 (Tenn. Ct. App. 1980). By contrast, "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby," the "gravamen of [the] action is in contract and not in tort." Green v. Moore, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001) (quotation marks and citation omitted).

Concorde argues that the legal basis of Plaintiffs' breach-of-contract claim is tortious. (See ECF No. 30 at 9-10; ECF No. 45 at 14-16.) Concorde cites Vance v. Schulder, 547 S.W.2d 927 (Tenn. 1977); Pinkerton & Laws Co. v. Nashville Flying Serv., Inc., 402 S.W.2d 861 (Tenn. 1966); and Harris v. Regions Fin. Corp., No. E2017-00838-COA-R3-CV, 2018 WL 3578513 (Tenn. Ct. App. July 25, 2018).

Vance addressed a minority investor plaintiff's claim that the majority investors in a closely held company induced him to sell his shares in the company by misrepresenting the price at which a competitor had offered to buy the company. See 547 S.W.2d at 928-31. The Tennessee Supreme Court held that the gravamen of that claim was "fraud in the inducement of a contract, the old common law action of deceit," and that Tenn.

15

Code Ann. § 28-3-105(1)'s three-year limitations period for "[a]ctions for injuries to personal or real property" applied. Id. at 931-33.

Pinkerton addressed a plaintiff's claim that, after it had entered into a service contract for the defendant to inspect and repair plaintiff's airplane, the defendant "failed to exercise the requisite skill and diligence" in inspecting and repairing the plane and the plane was damaged thereby. 402 S.W.2d at 861-62. The Tennessee Supreme Court held that the gravamen of that claim was "physical injury or damage caused to the airplane" and that the "suit sounds in tort, although it grew out of the contractual relationship of the parties." Id. at 862. The court noted that "[n]o part of the [service] contract [was] sought to be enforced by the action." Id.

Harris addressed a plaintiff's claim that the defendant bank induced him to take out a loan to purchase real estate by commissioning a "false appraisal of the property" that overstated its value. 2018 WL 3578513, at *1, 4-5. The Tennessee Court of Appeals held that the gravamen of the claim was "fraud in the inducement," as the plaintiff sought "damages flowing from the price that he claims the fraudulent appraisals induced him into paying." Id.

Plaintiffs argue that the legal basis of their breach-of-contract claim is contractual. (See ECF No. 41 at 14-18.)

16

Plaintiffs cite Benz-Elliott, which addressed a plaintiff's claim that a defendant buyer of real estate breached a land sale contract between the parties by failing to reserve for plaintiff's ownership an access "strip of property contemplated by the contract."  456 S.W.3d at 142-45, 152.  The Tennessee Supreme Court held that the legal basis of the claim was contractual because plaintiff's claim rested on the alleged breach of a specific contractual provision.  Id. at 152.

Plaintiffs have the better argument.  In a separate claim in this case, the fraud claim, Plaintiffs allege that Concorde fraudulently induced them to enroll in the HIM program by misrepresenting the program's present or future accreditation status.  (See ECF No. 23 ¶¶ 91-95.)  That claim resembles the claims in the cases Concorde cites, in which the plaintiffs sought damages for economic losses that were incidental to contractual arrangements, but did not seek to enforce the terms of the contracts themselves.

In their breach-of-contract claim, however, Plaintiffs allege that Concorde breached the express terms of the contracts between Concorde and Plaintiffs by failing to provide an accredited degree, remedial training, or a tuition refund. (Id. ¶¶ 109-12.)  The breach-of-contract claim is an action on the contracts.  See Green, 2001 WL 1660828, at *1, 3-4 (finding that the "gravamen of [plaintiff's] complaint [was] in

17

contract" where the plaintiff alleged the defendant breached a specific provision of a settlement agreement between the parties).   That Plaintiffs allege tortious wrongs in other claims is immaterial to the Court's determination of the gravamen of the breach-of-contract claim.   See Benz-Elliott, 456 S.W.3d at 149 ("[A] court must consider each claim, rather than the entire complaint, when ascertaining gravamen . . . ."").   The legal basis of Plaintiffs' breach-of-contract claim is contractual.

The second consideration is the "type of injuries for which damages are sought." Id. at 151.   In their breach-of-contract claim, Plaintiffs assert economic injuries arising from Concorde's alleged breach of a pre-enrollment agreement to provide an accredited degree and a post-graduation agreement to provide remedial training once the HIM program was accredited and to refund tuition if the HIM program was not accredited by September 1, 2018.   (See ECF No. 23 ¶¶ 109-12.)   Plaintiffs assert that they were injured when Concorde did not perform under those contracts.   (Id.)

As damages, Plaintiffs seek, inter alia, the return of their tuition.   (Id. ¶ 128(a).)   That is a colorable measure of contract damages.   As to the pre-enrollment agreement to provide an accredited degree, those damages correspond to Plaintiffs' reliance interests under the contract.   See E. Sky

18

Prods., Inc. v. Ram Graphics, Inc., No. 01A01-9305-CH00215, 1994 WL 642760, at *4 (Tenn. Ct. App. Nov. 16, 1994) (where expectation damages cannot be calculated with precision, damages based on a party's "reliance interests," such as "expenditures made in preparation for performance or in performance," are available in Tennessee) (citing Restatement (Second) of Contracts § 349 (1979)). As to the post-graduation agreement to provide remedial training and to refund tuition, those damages correspond to Plaintiffs' expectation interests in the contract. See id. at *3-4 (damages to "protect the injured party's expectation interests by awarding the party the benefit of its bargain" are the default measure of damages in Tennessee) (citing Restatement (Second) of Contracts § 344(a) & cmt. a (1979)).

Concorde points out that Plaintiffs seek other types of damages in the Amended Complaint, such as treble and punitive damages, which are unavailable for "ordinary breach of contract [claims]." (ECF No. 30-1 at 9-10.) Plaintiffs represent that they do not seek those other types of damages for their breach-of-contract claim. (ECF No. 41 at 15 n.2.) That Plaintiffs seek treble or punitive damages for other claims is immaterial to the Court's determination of the gravamen of the breach-of-contract claim. See Benz-Elliott, 456 S.W.3d at 149. The "type of injuries" for which Plaintiffs seek damages for their

19

breach-of-contract claim are contractual.  The gravamen of the claim lies in contract.

Because the gravamen of Plaintiffs' breach-of-contract claim lies in contract, Tenn. Code Ann. § 28-3-109(a)(3)'s six-year limitations period for "[a]ctions on contracts not otherwise expressly provided for" governs the claim.  See Benz-Elliott, 456 S.W.3d at 152 (applying this limitations period to a breach-of-contract action where the gravamen of the claim was in contract).  "[Tennessee] courts have held that a breach-of-contract cause of action accrues 'as of the date of the breach' . . . ."  Indiv. Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn. Inc., 566 S.W.3d 671, 709 (Tenn. 2019) (quoting Greene v. THGC, Inc., 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995)).[3]  Plaintiffs filed suit on August 29, 2019.  (ECF No. 1.)  Their breach-of-contract claim is timely if the alleged breaches occurred after August 29, 2013.  Concorde does not assert that Plaintiffs' breach-of-contract claim is untimely under a six-year limitations period, and the facts alleged do not demonstrate that it is.  The claim is based on alleged breaches occurring, at the earliest, when Plaintiffs

---

[3] The Tennessee Supreme Court has left open the question whether the "discovery rule" for claim accrual would ever apply to a breach-of-contract claim in Tennessee rather than the "date of the breach" rule.  See Indiv. Healthcare Specialists, 566 S.W.3d at 710-15.  The Court need not consider whether the discovery rule would apply to Plaintiffs' breach-of-contract claim in this case.  The claim is timely under either rule.

graduated, which the earliest group of Plaintiffs did in June 2014.  (See ECF No. 23 ¶ 34.)  Plaintiffs' breach-of-contract claim is timely.

### b.  Unjust Enrichment

"Unjust enrichment is a quasi-contractual theory or an equitable substitute for a contract claim in which a court may impose a contractual obligation where one does not exist." Metro. Gov't of Nashville and Davidson Cty. v. Cigna Healthcare of Tenn., Inc., 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) (citing Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998)).  In their unjust enrichment claim, Plaintiffs allege that, "[i]n the event that the Court determines that there is no existing enforceable contract, then, in the alternative, Plaintiffs provided a benefit to Concorde in the form of both money and compliance with the academic requirements of Concorde."  (ECF No. 23 ¶ 123.) Plaintiffs allege that Concorde "received and appreciated [that] benefit"; that "[b]oth parties reasonably understood that Plaintiffs would pay [Concorde] and comply with academic requirements and that [Concorde] would confer upon Plaintiffs a programmatically accredited degree upon graduation, within a reasonable time after graduation, or, in no event, later than September 1, 2018"; and that it would be "unjust" for Concorde to retain Plaintiffs' tuition, "having provided Plaintiffs an

accredited degree so long after graduation that Plaintiffs could not reasonably be expected to make use of [their] degree[s] to sit for the RHIT exam." (Id. ¶¶ 124-26.)

"There is no specific statute of limitations under Tennessee law for unjust enrichment. As such[,] 'the courts are admonished to determine the appropriate statute of limitations according to the gravamen of the complaint.'" Middle Tenn. Occup. and Envtl. Med., Inc. v. First Health Grp. Corp., No. 3:05-cv-0218, 2005 WL 3216282, at *4 (M.D. Tenn. Nov. 28, 2005) (quoting Swett v. Binkley, 104 S.W.3d 64, 67 (Tenn. Ct. App. 2002)). As with Plaintiffs' breach-of-contract claim, Concorde argues that the gravamen of Plaintiffs' unjust enrichment claim lies in tort, while Plaintiffs argue that it lies in contract. (See ECF No. 30-1 at 9-10; ECF No. 41 at 14-18; ECF No. 45 at 14-16.)

The first consideration is the legal basis of Plaintiffs' unjust enrichment claim. Benz-Elliott, 456 S.W.3d at 151. Concorde argues that the legal basis of Plaintiffs' unjust enrichment claim is tortious. (See ECF No. 30-1 at 9-10; ECF No. 45 at 14-16.) Concorde cites Precision Tracking Solutions, Inc. v. Spireon, Inc., No. 3:12-cv-00626, 2014 WL 3058396 (E.D. Tenn. July 7, 2014), which addressed a plaintiff's claim that, after it contracted with a defendant competitor to resell and distribute plaintiff's GPS tracking products, the defendant

"improperly used the plaintiff's information to acquire plaintiff's customer list" and sell products directly to plaintiff's customers. 2014 WL 3058396, at *1, 4-5. The U.S. District Court for the Eastern District of Tennessee held that the gravamen of the claim was tortious because the claim alleged "economic loss" from "defendants improperly taking its customers," which was "economic loss caused by fraud or misrepresentation." Id.

Plaintiffs argue that the legal basis of their unjust enrichment claim is contractual. (ECF No. 41 at 14-18.) Plaintiffs do not cite unjust enrichment cases. In several opinions, the Tennessee Court of Appeals has found that the legal basis of particular unjust enrichment claims is contractual. See Estate of Lyons v. Baugh, No. M2017-00094-COA-R3-CV, 2018 WL 3578525 (Tenn. Ct. App. July 25, 2018); Kaddoura v. Chattanooga-Hamilton Cty. Hosp. Auth., No. E2013-02573-COA-R3-CV, 2015 WL 1909727 (Tenn. Ct. App. Apr. 27, 2015).

In Lyons, the court held that the legal basis of an unjust enrichment claim was contractual where the plaintiff estate, as the assignee of claims originally belonging to a decedent's children, "sought the return of funds distributed to [the decedent's estranged husband] under [a] settlement agreement" from prior litigation among the decedent's children, the

estranged husband, and other parties.  2018 WL 3578525, at *3-
4.  In Kaddoura, the court held that the legal basis of an
unjust enrichment claim was contractual where a hospital
patient plaintiff alleged that, after he had contracted for
surgical services from the defendant hospital, the defendant
overcharged him and his insurer for the services provided.
2015 WL 1909727, at *4-5.

Lyons and Kaddoura are informative.  In each, the court
found the alleged unjust enrichment claim contractual because
the basis of the claim was a contract or quasi-contract under
which the defendant inequitably benefited.  See Lyons, 2018 WL
3578525, at *3-4 (plaintiff sought the return of funds
"inappropriate[ly]" and "wrongful[ly]" paid to the defendant
pursuant to a settlement agreement); Kaddoura, 2015 WL 1909727,
at *4-5, 7 (plaintiff sought the return of excess funds
"unjust[ly]" paid to defendant hospital by plaintiff's insurer
pursuant to a surgical services agreement).  Plaintiffs' theory
of unjust enrichment is similar.  Plaintiffs allege that they
enrolled in the HIM program; that "[b]oth parties reasonably
understood that Plaintiffs would pay [Concorde] and comply with
academic requirements and that [Concorde] would confer upon
Plaintiffs a programmatically accredited degree"; and that,
because Concorde failed to confer an accredited degree within a
reasonable time, it is unjust for Concorde to keep Plaintiffs'

24

tuition  money.   (See  ECF  No.  23  ¶¶  122-26.)   Some  of
Plaintiffs' other claims rest on allegedly fraudulent conduct,
but  the  unjust  enrichment  claim  does  not.   Plaintiffs  bring
that  claim  as  an  alternative  "[i]n  the  event  that  the  Court
determines  that  there  is  no  existing  enforceable  contract."
(Id. ¶ 123); see also Kondaur Capital Corp. v. Smith, 802 F.
App'x 938, 948-49 (6th Cir. 2020) (where plaintiff was "using
[an  unjust  enrichment  theory]  to  substitute  what  would
otherwise  be  its  breach-of-contract  claim  . . .  for
[defendant's]  failure  to  repay  [a]  promissory  note,"  the
gravamen of plaintiff's unjust enrichment claim "ar[ose] under
contract  law").   The  legal  basis  of  Plaintiffs'  unjust
enrichment claim is contractual.

    The  second  consideration  is  the  "type  of  injuries  for
which damages are sought." Benz-Elliott, 456 S.W.3d at 151.
Plaintiffs assert economic injuries for their unjust enrichment
claim.  They assert that "[i]t would be unjust for Concorde to
retain  the  funds  paid  for  the  HIM  degree[s]  under  the
circumstances, having provided Plaintiffs an accredited degree
so long after graduation . . . ."  (ECF No. 23 ¶ 126.)  The
sole measure of damages Plaintiffs seek is the return of the
tuition  paid  pursuant  to  the  alleged  contract  between
Plaintiffs and Concorde.  (Id.; see also ECF No. 41 at 17-18.)
Those  damages  arise  in  contract.   See  Kaddoura,  2015  WL

1909727, at *5 (damages sought for unjust enrichment claim were contractual where they "were economic only and 'flowed from the [alleged] breach of contract'") (quoting Benz-Elliott, 456 S.W.3d at 151); Kondaur, 802 F. App'x at 948-49 (plaintiff asserting unjust enrichment claim "solely request[ed] economic damages, which further suggests its claims are contractual in nature"). The "type of injuries" for which Plaintiffs seek damages for their unjust enrichment claim are contractual. The gravamen of the claim lies in contract.

Because the gravamen of Plaintiffs' unjust enrichment claim lies in contract, Tenn. Code Ann. § 28-3-109(a)(3)'s six-year limitations period for "[a]ctions on contracts not otherwise expressly provided for" governs the claim. See Lyons, 2018 WL 3578525, at *3-4 (applying this limitations period to an unjust enrichment action where the gravamen of the claim was in contract). Tennessee courts do not appear to have discussed when an unjust enrichment claim accrues. The "traditional accrual rule" in Tennessee is that a claim accrues "when the plaintiff has a cause of action and the right to sue." Redwing, 363 S.W.3d at 457 (quotation marks and citation omitted). Under that rule, Plaintiffs' unjust enrichment claim is timely. Plaintiffs' cause of action for unjust enrichment arose when Concorde failed to timely provide them the promised accredited degrees. That failure occurred, at the earliest, at

26

graduation, which, for all Plaintiffs, was less than six years before they filed suit in August 2019. Plaintiffs' unjust enrichment claim is timely.

### 2. Fraud and Tort Claims

The parties agree that Plaintiffs' fraud, negligent misrepresentation, promissory estoppel, and negligence claims are governed by Tenn. Code Ann. § 28-3-105(1)'s three-year limitations period for "[a]ctions for injuries to personal or real property." (See ECF No. 30-1 at 9-10; ECF No. 41 at 13-14.) They dispute when those claims accrued. Concorde argues that each of the claims accrued, at the latest, when Plaintiffs graduated, which the last group of Plaintiffs did on August 23, 2016. (See ECF No. 30-1 at 11; ECF No. 45 at 16-17.) Plaintiffs argue that, because of Concorde's "pattern of continued misrepresentations and breaches of duty of care that began at the time of enrollment, and did not end until December 31, 2018," the claims did not accrue before late 2018. (ECF No. 41 at 13-14.)

The "discovery rule" determines the accrual of "tort actions" in Tennessee, including actions "predicated on negligence, strict liability or misrepresentation." Potts v. Celotex Corp., 796 S.W.2d 678, 680 (Tenn. 1990). Under the discovery rule, "the cause of action accrues and the statute of limitations begins to run when the injury occurs or is

27

discovered, or when[,] in the exercise of reasonable care and diligence, it should have been discovered." Id. (citing McCroskey v. Bryant Air Conditioning Co., 524 S.W.2d 487, 491 (Tenn. 1975)); see also Robinson v. Baptist Memorial Hosp., 464 S.W.3d 599, 608 (Tenn. Ct. App. 2014) ("Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has either actual or constructive knowledge of a claim.") (citing Redwing, 363 S.W.3d at 459).

Plaintiffs filed suit on August 29, 2019. (ECF No. 1.) Their fraud and tort claims are governed by a three-year limitations period and the discovery rule. The relevant question for statute-of-limitations purposes is whether Plaintiffs had actual or constructive knowledge of those claims before August 29, 2016.

### a. Fraud

A fraud claim is based on "an intentional misrepresentation with regard to a material fact." Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). Two kinds of misrepresentations can serve as bases for fraud claims: (1) a misrepresentation about "an existing or past fact," or (2) "a promise of future action without the present intention to carry out the promise." Id. (quotation marks and citations omitted).

28

In their fraud claim, Plaintiffs allege that Concorde made a variety of misrepresentations about the HIM program between 2012 and 2018.  (See ECF No. 23 ¶¶ 23-77, 91-92.)  They allege that, both before and during enrollment, Concorde represented at different times, to different Plaintiffs, that the HIM program was accredited or would be by graduation and that they would graduate with the ability to sit for the RHIT exam.  (See id. ¶¶ 23, 26, 31, 33, 35-36, 38, 41, 43-45, 47, 49, 52, 56-57.)  They allege that, after graduation, Concorde represented that the HIM program would be accredited "soon" or within a reasonable time; that Concorde would provide remedial training to allow Plaintiffs to sit for the RHIT exam; and that, if the HIM program were not accredited by September 1, 2018, Concorde would refund Plaintiffs' tuition.  (See id. ¶¶ 61, 64, 66, 68.)

Plaintiffs base their fraud claim on all of these alleged misrepresentations.  (See id. ¶¶ 91-92.)  Where a fraud claim is based on multiple, distinct alleged misrepresentations giving rise to different injuries, the claim's accrual is not measured solely from when the plaintiffs discovered their injuries from the oldest-in-time misrepresentation.  Separate misrepresentations are assessed individually.  The claim may be time-barred as to some misrepresentations and timely as to others.  See, e.g., Hamm v. Wyndham Resort Dev. Corp., No. 3:19-cv-00426, 2020 WL 1853577, at *8-12 (M.D. Tenn. Apr. 13,

2020) (Tennessee fraud claim was timely where based on
misrepresentations about the availability of a timeshare
buyback program that plaintiffs did not learn the falsity of
until shortly before they filed suit, but was time-barred where
based on misrepresentations made at other times and about other
topics the plaintiffs knew the falsity of years before); McKee
v. Am. Brokers Conduit, No. 12-cv-2406, 2013 WL 11765826, at
*1-4 (W.D. Tenn. Jan. 4, 2013) (Tennessee fraud claim was time-
barred where based on allegedly fraudulent nomination in deed
of trust executed five years before plaintiffs filed suit, but
was timely where based on allegedly fraudulent assignment of
interest in deed of trust that occurred one year before
plaintiffs filed suit).

To the extent Plaintiffs base their fraud claim on pre-
graduation representations that the HIM program was currently
accredited or would be by graduation, the claim is time-barred.
Each of those statements was made more than three years before
Plaintiffs filed suit on August 29, 2019. (See ECF No. 23
¶¶ 23, 26, 31, 33, 35-36, 38, 41, 43-45, 47, 49, 52, 56-57.)
When Plaintiffs graduated, they knew or should have known that
the HIM program was not accredited and that those statements
were false. When Plaintiffs graduated, they had also been
injured: they had been given a degree that was not what they
were told they would receive. See Potts, 796 S.W.2d at 681 (a

30

"cause of action in tort" accrues when "a judicial remedy is available to the plaintiff," i.e., after "a breach of some legally recognized duty owed by the defendant to the plaintiff" and "some legally cognizable damage caused to the plaintiff by the breach").

Plaintiffs seek to save their entire fraud claim from time bar, including where based on pre-graduation misrepresentations about accreditation status, by characterizing Concorde's misrepresentations about accreditation status as a "pattern of continued misrepresentations and breaches of duties of care that began at the time of enrollment, and did not end until December 31, 2018, at the earliest." (ECF No. 41 at 13-14.) The "continuing" nature of Concorde's misrepresentations about accreditation status does not toll Plaintiffs' fraud claim beyond when Plaintiffs had at least some knowledge of their injuries, i.e., at graduation. "[T]he discovery rule does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages." Redwing, 363 S.W.3d at 459 (citing B&B Enters. of Wilson Cty., LLC v. City of Lebanon, 318 S.W.3d 839, 849 (Tenn. 2010)). "[T]he statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry." Potts, 796 S.W.2d at 680-81 (citing Hoffman v. Hosp.

Affs., Inc., 652 S.W.2d 341, 344 (Tenn. 1983)).  To the extent Plaintiffs base their fraud claim on pre-graduation misrepresentations that the HIM program was currently accredited or would be by graduation, the claim is time-barred.

Plaintiffs allege other, more recent misrepresentations. They allege that, after graduation, Concorde made several forward-looking statements, including that it would provide a remedial course to allow Plaintiffs to sit for the RHIT exam and that it would refund Plaintiffs' tuition if the HIM program were not accredited by September 1, 2018.  (See ECF No. 23 ¶¶ 61, 64, 66, 68.)  Those alleged post-graduation misrepresentations give rise to a timely fraud claim. Plaintiffs allege, for example, that, in a June 2017 letter (hereafter, the "June 2017 Letter"), the president of Concorde's Memphis campus told Plaintiffs that Concorde would "offer additional training and remediation for all graduates in preparation for the [RHIT] exam, at no charge," and that, "should the program not obtain accreditation by September 1, 2018, [Concorde] will issue you a full refund of tuition and other fees, and any applicable grants."  (Id. ¶ 64.)  Those representations were not made until about two years before Plaintiffs filed suit.  They did not injure Plaintiffs until some time after that, in 2018 or 2019, when Concorde failed to provide adequate remedial training or refund tuition.  (See id.

32

¶¶ 70, 77-80.)   To the extent Plaintiffs base their fraud claim on the statements in the June 2017 Letter or other post-graduation representations giving rise to injury after August 2016, Plaintiffs' fraud claim is timely.

### b.   Negligent Misrepresentation

In Tennessee, a negligent misrepresentation claim must be based on a misrepresentation about "a material past or existing fact." Harris v. Nationwide Mut. Fire Ins. Co., 367 F. Supp. 3d 768, 777 (M.D. Tenn. 2019) (citing Gleason v. Freeman, No. 06-cv-2443, 2008 WL 2485607, at *4 (W.D. Tenn. June 17, 2008), York v. Branell Coll., No. 02A01-9209-CV-00257, 1993 WL 484203, at *12-13 (Tenn. Ct. App. Nov. 23, 1993), and McElroy v. Boise Cascade Corp., 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982)).

In their negligent misrepresentation claim, Plaintiffs allege that Concorde misrepresented a single "existing fact": that Concorde "[p]ossessed programmatic accreditation for the HIM program that would enable Plaintiffs to sit for the RHIT exam."[4]   (ECF No. 23 ¶ 101(a).)   All of Concorde's alleged

---

[4] Plaintiffs also purport to base their negligent misrepresentation claim on several sets of alleged misrepresentations about the future, such as statements that Concorde "[w]ould obtain programmatic accreditation for the HIM program within a reasonable time following Plaintiffs' graduation."   (See ECF No. 23 ¶ 101(b)-(e).)   Those statements cannot serve as the basis of Plaintiffs' negligent misrepresentation claim.   Tennessee does not recognize negligent misrepresentation claims based on forward-looking statements.   See McElroy, 632 S.W.2d at 130 (for a negligent misrepresentation claim, "conjecture or representations concerning future events are not actionable even though they may later prove to

misrepresentations about the HIM program's existing accreditation status were made before Plaintiffs graduated. (See id. ¶¶ 26, 35-36, 43, 45, 52.) Plaintiffs allege no post-graduation misrepresentations about existing accreditation status. By graduation, at the latest, Plaintiffs knew or should have known that Concorde's statements about existing accreditation status were false.

Plaintiffs do not dispute that, by graduation, they knew or should have known that Concorde's statements about existing accreditation status were false. They argue that the negligent misrepresentation claim is timely because Concorde's "repeated false promises and assurances of forthcoming timely accreditation concealed Plaintiffs' injuries until after September 1, 2018." (ECF No. 41 at 13-14.) That characterization does not comport with the facts alleged or the relevant law. As discussed supra, Plaintiffs were injured, and either knew or should have known of their injury, when they were given an unaccredited degree at graduation. Concorde's post-graduation representations about impending accreditation may have given Plaintiffs a reasonable basis to believe Concorde would remedy their injury. That does not, however, toll their negligent misrepresentation claim beyond the time

---

be false") (citing Young v. Cooper, 203 S.W.2d 376 (Tenn. Ct. App. 1947)).

when they first knew of the injury.  The discovery rule "delays accrual when a defendant's conduct creates circumstances that could injure the plaintiff upon the occurrence of some future event," but "does not delay accrual when a defendant's conduct creates a present injury that might be remedied by a future event."  Ne. Knox Util. Dist. v. Stanford Constr. Co., 206 S.W.3d 454, 459-60 (Tenn. Ct. App. 2006) (citing Sec. Bank & Tr. Co. of Ponca City, Okla. v. Fabricating, Inc., 673 S.W.2d 860 (Tenn. 1983)) (finding that plaintiff subcontractor's claim for extra expenses incurred during excavation project accrued on the day it requested payment for the expenses from defendant, even though, "[a]t the time . . . there may have been some possibility that [plaintiff] might recover some or all of the expenses in the future" if defendant chose to compensate plaintiff for the expenses incurred).

Plaintiffs' negligent misrepresentation claim accrued when Plaintiffs graduated, which the last group of Plaintiffs did on August 23, 2016, more than three years before Plaintiffs filed suit on August 29, 2019.  (See ECF No. 1.)  Plaintiffs' negligent misrepresentation claim is time-barred.  The negligent misrepresentation claim is DISMISSED.

### c.   Promissory Estoppel

A promissory estoppel claim is based on a clear promise that a plaintiff reasonably relied on to his or her detriment.

35

See <u>Chavez v. Broadway Elec. Serv. Corp.</u>, 245 S.W.3d 398, 404-05 (Tenn. Ct. App. 2007).[5]  In their promissory estoppel claim, Plaintiffs allege that they relied to their detriment on several promises Concorde made.  (<u>See</u> ECF No. 23 ¶¶ 105-08.) They allege that, before graduation, Concorde promised that "Plaintiffs would earn a degree sufficient to permit them to sit for the RHIT exam upon Plaintiffs' graduation from the HIM program" and that "Concorde would confer [an accredited] HIM degree by the date of Plaintiffs' graduation."  (<u>Id.</u> ¶ 106(a)-(b).)   Plaintiffs allege that, after graduation, Concorde promised that it would provide Plaintiffs an accredited degree "within a reasonable time" and "no later than September 1, 2018," and that, "upon obtaining accreditation, Concorde would provide a remedial course of study sufficient to prepare Plaintiffs for the RHIT exam."  (<u>Id.</u> ¶ 106(c)-(e).)  Plaintiffs allege that they relied on each of those promises to their detriment by, <u>inter alia</u>, "pa[ying] for the HIM program" and

---

[5] "Promissory estoppel is an alternative theory to recovery on an express contract."  <u>Sparton Tech., Inc. v. Util-Link, LLC</u>, 248 F. App'x 684, 689-90 (6th Cir. 2007).  It is not a tort claim like Plaintiffs' fraud, negligent misrepresentation, or negligence claims.  However, in Tennessee, a promissory estoppel claim requires a showing that the defendant's conduct "verge[d] on actual fraud." <u>Shedd v. Gaylord Entm't Co.</u>, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003).  Plaintiffs do not dispute that Tenn. Code Ann. § 28-3-105(1)'s three-year limitations period governs their promissory estoppel claim.  (<u>See</u> ECF No. 41 at 13.)  The Court applies that limitations period.

deferring other educational and employment opportunities.  (Id. ¶ 107.)

To the extent Plaintiffs base their promissory estoppel claim on pre-graduation promises to provide an accredited degree or a degree sufficient to allow them to sit for the RHIT exam at graduation, the claim is time-barred.  Plaintiffs knew or should have known at graduation that Concorde had not fulfilled these promises.  Before graduation, Plaintiffs relied on those promises to their detriment by "pa[ying] for the HIM program" and deferring other opportunities in order to attend the program.  (See id.)  Plaintiffs knew or should have known of their injury by graduation.  See Precision Tracking Solutions, 2014 WL 3058396, at *5 (promissory estoppel claim was time-barred where plaintiff knew defendant had broken its promise not to solicit plaintiff's customers more than three years before plaintiff filed suit).

Plaintiffs allege two promises that give rise to a timely promissory estoppel claim.  They allege that, after graduation, Concorde promised that it would provide Plaintiffs an accredited degree "within a reasonable time" and "no later than September 1, 2018."  (See ECF No. 23 ¶ 106(c)-(d).)  Plaintiffs were not injured by that promise until after September 1, 2018, when Concorde had failed to provide an accredited degree.  Plaintiffs allege that Concorde promised that, "upon obtaining

37

accreditation, Concorde would provide a remedial course of study sufficient to prepare Plaintiffs for the RHIT exam." (Id. ¶ 106(e).)  The HIM program became accredited on or around December 31, 2018.  (Id. ¶ 74.)  Only thereafter, in 2019, did Concorde fail to provide a sufficient remedial program.  (Id. ¶¶ 77-80.)  To the extent Plaintiffs base their promissory estoppel claim on Concorde's post-graduation promises to provide an accredited degree and a remedial course of study, the claim is timely.

### d.  Negligence

A negligence claim is based on a breach of a duty of care imposed by law.  See Bissinger v. New Country Buffet, No. M2011-02183-COA-R9-CV, 2014 WL 2568413, at *8 (Tenn. Ct. App. June 6, 2014) (citing Satterfield v. Breeding Insul. Co., 266 S.W.3d 347, 355 (Tenn. 2008)).  A "breach" is "conduct below the applicable standard of care."  Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 364 (Tenn. 2009).  In their negligence claim, Plaintiffs allege that Concorde breached two different duties of care: (1) a duty "to competently obtain programmatic accreditation for the HIM program within the various timeframes identified by [Concorde]," and (2) a duty "to provide reasonable and adequate remedial training sufficient to allow a reasonable person, similarly situated to Plaintiffs, to sit for

38

and pass the RHIT exam within a reasonable time." (ECF No. 23 ¶¶ 114, 118.)

To the extent Plaintiffs base their negligence claim on Concorde's alleged breach of a duty to obtain accreditation for the HIM program, the claim is time-barred. Plaintiffs allege that this "duty of care began at the time that [Concorde] enrolled Plaintiffs into the HIM program and continued through September 1, 2018." (Id. ¶ 117.) Plaintiffs characterize the duty as an obligation to obtain accreditation "within the various timeframes identified by [Concorde]." (Id. ¶ 114.) One of those "various timeframes" was the period between Plaintiffs' enrollment and their graduation. Plaintiffs allege Concorde repeatedly said it would obtain accreditation by then. (See id. ¶¶ 23, 26, 31, 33, 35, 38, 41, 45, 47, 56-57.) By graduation, when Concorde failed to provide Plaintiffs an accredited degree, it had breached its duty to do so. By graduation, Plaintiffs had been injured by Concorde's breach: they were given a degree that was not accredited. Plaintiffs' negligence claim, to the extent based on a breach of a duty to obtain accreditation, accrued at graduation. See Potts, 796 S.W.2d at 681 (a "cause of action in tort" accrues after "a breach of some legally recognized duty owed by the defendant to the plaintiff" and "some legally cognizable damage caused to the plaintiff by the breach").

Plaintiffs argue that their negligence claim is not time-barred to the extent based on Concorde's breach of a duty to obtain accreditation because Concorde breached that duty in a "continuous . . . pattern" that was not limited to "one point in time." (ECF No. 41 at 13-14.) In essence, Plaintiffs argue that, because Concorde's breach of its duty to provide an accredited degree was continuous from graduation until several years after graduation, their claim based on that breach did not accrue until the breach ceased.

Plaintiffs' argument does not comport with the discovery rule. Under that rule, where a negligent defendant's breach is "continuing," a claim's accrual is not tolled beyond the time the plaintiff initially learned of his or her injuries from the breach. See Wansley v. Refined Metals Corp., No. 02A01-9503-CV-00065, 1996 WL 502497, at *2-6 (Tenn. Ct. App. Sept. 6, 1996) (collecting cases and holding that plaintiff's negligence claims against employer asserting injuries from repeated toxic workplace emissions accrued when plaintiff initially "reached the conclusion that he was sick and that his illness was caused by the defendant"). Where a plaintiff "learns of his injuries and learns of the causal connection to the defendant's conduct and continues to be subjected to such conduct," he or she must nonetheless "bring suit within [the applicable time from] the discovery of [the] injury and its cause." Vaughn v. DP

40

Packaging, Inc., 17 F. App'x 286, 290-91 (6th Cir. 2001) (quoting Wansley, 1996 WL 502497, at *6) (emphasis added); see also Clifton v. Bass, 908 S.W.2d 205, 209 (Tenn. Ct. App. 1995) (under the discovery rule, "[a] plaintiff is not entitled to a new limitations period to begin with the appearance of each new injury or complication") (quotation marks and citations omitted).

Tennessee courts formerly recognized the "continuous tort doctrine," which provided that, "[w]here allegedly tortious conduct occurs repeatedly over a period of time," the "limitation period does not begin to run until the plaintiff's exposure to the conduct ceases, regardless of when he discovers the injury and its cause." Vaughn, 17 F. App'x at 290 (citing Tenn. Eastman Corp. v. Newman, 121 S.W.2d 130, 135 (Tenn. Ct. App. 1938)). That rule "has been completely subsumed by the discovery rule." Id. (citing Cherry v. Williams, 36 S.W.3d 78, 87 (Tenn. Ct. App. 2000), Stanbury v. Bacardi, 953 S.W.2d 671, 676 (Tenn. 1997), and Wansley, 1996 WL 502497, at *6). To the extent Plaintiffs base their negligence claim on Concorde's breach of a duty to obtain accreditation for the HIM program, the claim is time-barred.

To the extent Plaintiffs base their negligence claim on Concorde's alleged breach of a duty to "provide reasonable and adequate remedial training sufficient to allow a reasonable

41

person, similarly situated to Plaintiffs, to sit for and pass the RHIT exam within a reasonable time," the claim is timely. (ECF No. 23 ¶ 118.)  Plaintiffs allege that Concorde "incurred this duty as of the date of notifying Plaintiffs of their programmatic accreditation on December 31, 2018," and thereafter breached the duty "when it failed to provide adequate remedial education and training."  (Id. ¶¶ 119-20.) Plaintiffs' negligence claim based on Concorde's breach of a duty to provide "reasonable and adequate remedial training" did not arise until sometime after December 31, 2018.  To the extent it is based on breach of that duty, Plaintiffs' negligence claim is timely.

### 3.   TCPA Claim

A TCPA claim is based on an "unfair or deceptive act or practice described in § 47-18-104(b)" that causes the plaintiff to "suffer[] an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value."  Tenn. Code Ann. § 47-18-109(a)(1).  Section 47-18-104(b) of the TCPA lists the specific kinds of "unfair or deceptive acts or practices" that are unlawful under the statute, such as "[f]alsely passing off goods or services as those of another," "[c]ausing likelihood of confusion . . . as to the source, sponsorship, approval or certification of goods or services," and others.  Tenn. Code Ann. § 47-18-104(b).  A

42

"deceptive act or practice" under the TCPA "is, in essence, 'a material representation, practice or omission likely to mislead . . . reasonable consumer[s]' to their detriment." <u>Fayne v. Vincent</u>, 301 S.W.3d 162, 177 (Tenn. 2009) (quoting <u>Ganzevoort v. Russell</u>, 949 S.W.2d 293, 299 (Tenn. 1997)).

The TCPA's statute of limitations provides:

> Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

Tenn. Code Ann. § 47-18-110.  Concorde argues that Plaintiffs' TCPA claim is time-barred because Plaintiffs knew or should have known of their injuries from Concorde's alleged violations of the TCPA by the time they graduated, more than one year before they filed suit on August 29, 2019. (<u>See</u> ECF No. 30-1 at 6-7; ECF No. 45 at 10-12.)  Concorde also argues that, as to nine of the eleven Plaintiffs, the TCPA claim is time-barred because it was brought more than five years after "the date of the relevant 'consumer transaction.'"  (<u>See</u> ECF No. 30-1 at 8 (citing Tenn. Code Ann. § 47-18-110).)

The Court need consider only Concorde's first argument, which is dispositive.  An action under the TCPA "shall be brought within one (1) year from a person's discovery of the unlawful act or practice . . . ."  Tenn. Code Ann. § 47-18-110.

43

"The inclusion of the word 'discovery' incorporates the discovery rule into the TCPA." <u>Leonard v. Leo's Exterm. Servs., Inc.</u>, No. E2009-01398-COA-R3-CV, 2010 WL 2134145, at *12-13 (Tenn. Ct. App. May 27, 2010) (citing <u>Schmank v. Sonic Auto., Inc.</u>, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *2 (Tenn. Ct. App. May 16, 2008)). A TCPA claim accrues when the plaintiff has actual or constructive knowledge of his or her injuries from the defendant's violation of the TCPA.[6] <u>See Fortune v. Unum Life Ins. Co. of Am.</u>, 360 S.W.3d 390, 401-03 (Tenn. Ct. App. 2010). For Plaintiffs' TCPA claim, the relevant question for statute-of-limitations purposes is whether Plaintiffs had actual or constructive knowledge of their injuries from Concorde's alleged violations of the TCPA before August 29, 2018.

---

[6] There is some uncertainty about whether a TCPA claim accrues when the plaintiff discovers the defendant's unlawful act or practice or when the plaintiff discovers his or her injuries. The plain language of the TCPA's statute of limitations suggests the former reading. <u>See</u> Tenn. Code Ann. § 47-18-110 (a TCPA claim accrues upon "a person's discovery of the unlawful act or practice"). Most courts have adopted the latter reading. <u>See Fortune</u>, 360 S.W.3d at 401-03 (analyzing whether plaintiff filed his TCPA claim within one year of discovering his injuries from defendant's unlawful act or practice); <u>Schmank</u>, 2008 WL 2078076, at *2-5 (same); <u>but see Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.</u>, 129 F. Supp. 3d 589, 598 (M.D. Tenn. 2015) (stating that a plaintiff's "discovery of the unlawful act or practice," not "the date of the ascertainable loss," "begin[s] the running of the statute of limitations under the TCPA") (citing Tenn. Code Ann. § 47-18-110). The parties assume that a TCPA claim accrues when the plaintiff discovers his or her injuries. (<u>See</u> ECF No. 30-1 at 6; ECF No. 41 at 10.) For purposes of the Motion to Dismiss, the Court applies that rule.

Plaintiffs allege that Concorde has "violated the TCPA in the following ways": (1) by "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services"; (2) by "[c]ausing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another"; and (3) by "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have." (ECF No. 23 ¶ 98 (citing Tenn. Code Ann. § 47-18-104(b)(2)-(3), (5).) Plaintiffs allege that a single "deceptive act or practice" is the basis for each of those violations: that Concorde "misled Plaintiffs into believing that the degree with which they graduated would be accredited on or before their graduation, or within a reasonable time thereafter, but in any event no later than September 1, 2018." (Id.)

The factual basis of this "deceptive act or practice" is the same as the factual basis of Plaintiffs' fraud claim. Plaintiffs assert throughout the Amended Complaint that Concorde misrepresented the HIM program's existing or future accreditation status before enrollment, during enrollment, and after graduation. (See id. ¶¶ 23, 26, 31, 33, 35-36, 38, 41,

43-45, 47, 49, 52, 56-57, 61, 68.)  Plaintiffs do not explain whether those repeated misrepresentations constitute a "deceptive act" or a "deceptive practice" under the TCPA, but refer to them in their briefing as a series of "deceptive actions."  (ECF No. 41 at 10-11.)  Plain English establishes that what Plaintiffs allege is a deceptive "practice."  See "Act," Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/act (an "act" is "the doing of a thing"); "Practice", Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/practice (a "practice" is "a repeated or customary action").

Plaintiffs' TCPA claim is time-barred.  By graduation, if not before, Plaintiffs knew or should have known that Concorde had misled them by representing that the HIM program was accredited or would be accredited by graduation.  At graduation, Plaintiffs were injured by that deceptive practice -- or, alternatively, that series of deceptive acts -- when they were given a degree worth less than what they had bargained for.  See Tenn. Code Ann. § 47-18-109(a)(1) (the TCPA's cause of action is for "[a]ny person who suffers an ascertainable loss of money or property . . . or any other article, commodity, or thing of value" as a result of an "unfair or deceptive act or practice"); Fortune, 360 S.W.3d at 403 (TCPA claim was time-barred where plaintiff "was

indisputably aware of sufficient facts [more than a year before
he filed suit] to place a reasonable person on notice that his
injury or damages resulted from [defendant's] alleged unlawful
conduct"). Each Plaintiff graduated no later than August 2016.
The TCPA's one-year limitations period ran on Plaintiffs' TCPA
claims well before they filed suit in August 29, 2019. (ECF
No. 1.)

Plaintiffs concede that they suffered some injury from
Concorde's deceptive practice at graduation, when they "did not
graduate with a programmatically-accredited degree." (ECF No.
41 at 11.) Plaintiffs assert, however, that their "TCPA
allegations go further to allege [Concorde] committed unfair or
deceptive acts by misleading Plaintiffs into thinking they
would receive such accredited degree[s] and [would] thus [be]
able to sit for the RHIT exam, within a reasonable time after
graduation or by September 1, 2018." (Id.) In essence,
Plaintiffs ask the Court to find that their TCPA claim is
timely because, although part of Concorde's misleading practice
occurred before graduation, and injured Plaintiffs at
graduation, the other part occurred after graduation, and
continued until September 1, 2018, less than a year before
Plaintiffs filed suit.

"[T]hat would be slicing the baloney mighty thin."
Sessions v. Dimaya, 138 S. Ct. 1204, 1215 (2018) (Kagan, J.).

47

Courts have dismissed TCPA claims as untimely in similar situations. See Leonard, 2010 WL 2134145, at *12-13 (plaintiff's TCPA claim against an exterminator who allegedly did defective work accrued when plaintiff "was aware of facts sufficient to put him on notice that he had suffered an injury," although the parties' business relationship continued until less than a year before plaintiff filed suit and "some of the damage [may have] happened late in the game"); Middle Tenn. Occup. and Envtl. Med., 2005 WL 3216282, at *2-4 (plaintiff's TCPA claim against healthcare administrator alleging that defendant repeatedly and "unlawfully with[held] money" from plaintiff accrued when plaintiff first learned of defendant's "alleged malfeasance," and did not start again with "each occurrence of funds being withheld" thereafter); Lindsey v. Allstate Ins. Co., 34 F. Supp. 2d 636, 648-49 (W.D. Tenn. 1999) (plaintiffs' TCPA claim against insurer alleging that defendant engaged in "fraudulent and misleading insurance practices" accrued when plaintiffs first discovered their injuries from those practices, even where the "wrongdoing was continuous in nature"). Whether conceived as a deceptive practice or as a series of deceptive acts, Concorde's repeated misrepresentations about the HIM program's accreditation status do not give rise to a timely TCPA claim because Plaintiffs knew or should have known of the misrepresentations, and their

48

injuries from them, more than a year before they filed suit.
Plaintiffs' TCPA claim is untimely.   The TCPA claim is
DISMISSED.

### 4.   Tolling Exceptions

Plaintiffs argue that the tolling exceptions of fraudulent
concealment and equitable estoppel save their claims from time
bar, to the extent any are untimely on the face of the Amended
Complaint.   (See ECF No. 41 at 8-12.)   They argue that the
fraudulent concealment exception tolled the running of the
statute of limitations for their TCPA claim until September 1,
2018.   (Id. at 10-12.)   They argue that the equitable estoppel
exception tolled the running of the statutes of limitations for
all of their claims until September 1, 2018.   (Id. at 8-10.)

### a.   Fraudulent Concealment

Fraudulent concealment is a tolling exception that tolls
the running of a statute of limitations "when 'the defendant
has taken steps to prevent the plaintiff from discovering he
[or she] was injured.'"   Redwing, 363 S.W.3d at 462 (quoting
Fahrner v. SW Mfg., Inc., 48 S.W.3d 141, 146 (Tenn. 2001)).   To
establish that the fraudulent concealment exception applies, a
plaintiff must plead that: (1) the defendant affirmatively
concealed the plaintiff's injury or failed to disclose material
facts regarding the injury despite a duty to do so; (2) the
plaintiff could not have discovered the injury despite

49

reasonable care and diligence; (3) the defendant knew the plaintiff had been injured; and (4) the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry. Id. at 462-63 (quotation marks and citations omitted).  Where it applies, the fraudulent concealment exception tolls the running of the statute of limitations "until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim."  Id. at 463 (citing Fahrner, 48 S.W.3d at 145).

"The heightened pleading standard of [] Rule 9(b) applies to fraudulent concealment, just as it applies to the fraud itself."  Chunn v. Se. Logistics, Inc., 794 F. App'x 475, 477 (6th Cir. 2019) (citing Evans v. Pearson Enters., Inc., 434 F.3d 839, 951 (6th Cir. 2006)).  A plaintiff asserting fraudulent concealment in federal court "must 'state with particularity' the facts showing he satisfies the exception, including his own diligence."  Id. (quoting Fed. R. Civ. P. 9(b)).  "The burden [is] on a plaintiff to establish fraudulent concealment so as to toll the statute of limitations."

*Robinson*, 464 S.W.3d at 611 (citing *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992)).

Plaintiffs assert that Concorde fraudulently concealed their injuries by its misleading representations about the HIM program's accreditation status with "repeated promises and assurances of forthcoming timely accreditation." (ECF No. 41 at 11-12.) They assert that they "acted diligently by proactively and continuously reaching out to Concorde to obtain updates on the accreditation status, but even so were unable to discover their injuries until September 1, 2018," when Concorde failed to "meet [its] self-imposed accreditation deadline." (*Id.*) Plaintiffs argue that, because of this alleged concealment, the statute of limitations for their TCPA claim did not begin to run until September 1, 2018, less than a year before they filed suit. (*Id.*)

Plaintiffs have not met their burden to establish the elements of fraudulent concealment. They do not plead with particularity the first element, that "the defendant affirmatively concealed the plaintiff's injury" or "failed to disclose material facts regarding the injury . . . despite a duty to do so." *Redwing*, 363 S.W.3d at 462-63. Affirmative concealment is action "to prevent [the plaintiff] from discovering the fraud." *Chunn*, 794 F. App'x at 477. Plaintiffs allege that Concorde affirmatively concealed their

51

injuries by its misrepresentations about accreditation status with "false promises or assurances" that it would obtain accreditation in the future.  (ECF No. 41 at 11-12.)  That is not affirmative concealment.  It is simply the continuation of Concorde's underlying fraud.  "The fraud, standing alone, does not toll the statute of limitations; it is the concealment of the fraud that tolls the procedural bar."  Chunn, 794 F. App'x at 477 (quoting In re Estate of Davis, 308 S.W.3d 832, 842 (Tenn. 2010)) (emphasis added).  Plaintiffs nowhere allege that Concorde sought to hide Plaintiffs' injuries resulting from the HIM program's lack of accreditation.  To the contrary: the Amended Complaint alleges that, after graduation, Concorde's Memphis campus president sent Plaintiffs the June 2017 Letter, in which he "acknowledged [Concorde's] failure to provide an accredited degree within a reasonable time as promised."  (ECF No. 23 ¶ 64.)  Plaintiffs do not plead affirmative concealment, with particularity or otherwise.

Plaintiffs also do not plead with particularity the second element of fraudulent concealment, that "the plaintiff could not have discovered the injury . . . despite reasonable care and diligence."  Redwing, 363 S.W.3d at 463.  Plaintiffs represent that they "acted diligently by proactively and continuously reaching out to Concorde to obtain updates on the accreditation status, but even so were unable to discover their

injuries until September 1, 2018," when Concorde failed to "meet [its] self-imposed accreditation deadline." (ECF No. 41 at 11.) Plaintiffs knew or should have known of their injuries well before September 1, 2018. As discussed in several sections <u>supra</u>, at graduation, when Plaintiffs were given unaccredited degrees, they knew or should have known that they had been injured. The Amended Complaint pleads that, numerous times prior to graduation, Concorde informed Plaintiffs that the HIM program was not accredited. (<u>See</u> ECF No. 23 ¶¶ 38, 41, 48, 54, 56.) Because Plaintiffs had actual knowledge of their injuries several years before they filed suit, they "cannot establish the essential element [of fraudulent concealment] that they 'could not have discovered the cause of action despite exercising reasonable care and diligence.'" <u>Brandt v. McCord</u>, 281 S.W.3d 394, 405-06 (Tenn. Ct. App. 2008). The fraudulent concealment exception does not toll the running of the statute of limitations for Plaintiffs' TCPA claim.

### b.   Equitable Estoppel

Equitable estoppel is a tolling exception that tolls the running of a statute of limitations "when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." <u>Redwing</u>, 363 S.W.3d at 460 (citing <u>Fahrner</u>, 48 S.W.3d at 145, and <u>Ingram v. Earthman</u>, 993 S.W.2d 611, 633 (Tenn. Ct. App. 1998)). To establish that the

equitable estoppel exception applies, a plaintiff must plead
that: (1) the defendant induced the plaintiff to delay filing
suit with "specific promises, inducements, suggestions,
representations, assurances or other similar conduct" that the
defendant knew or should have known would induce the plaintiff
to delay; and (2) the plaintiff's delay in filing suit "was not
attributable to [his or her] own lack of diligence."[7]  Id.
(citing Fahrner, 48 S.W.3d at 145, and Hardcastle v. Harris,
170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)).

Where it applies, the equitable estoppel exception tolls
the running of the statute of limitations "for the period
during which the defendant misled the plaintiff" into delaying
suit.  Id. at 461.  In Tennessee, "[s]tatutes of limitations
are favored because they promote the timely pursuit of legal
rights," and "estoppels are not favored when they prevent
parties from asserting claims or defenses to which they would
otherwise be entitled."  Hardcastle, 170 S.W.3d at 84-85
(citing Brown v. Hipshire, 553 S.W.2d 570, 571 (Tenn. 1977),
and Rogers v. Colville, 238 S.W. 80, 83 (Tenn. 1922)).  "The

---

[7] Equitable estoppel is distinct from "equitable tolling," which is a
broader tolling exception that "allows a court to suspend the
running of the statute of limitations when the plaintiff, despite
reasonable efforts, cannot obtain enough information to file his
complaint on time, even if the defendant is not at fault."  Fahrner,
48 S.W.3d at 145 n.2.  Tennessee has "declined to recognize"
equitable tolling.  Id. (citing Norton v. Everhart, 895 S.W.2d 317,
321 (Tenn. 1995)).

party invoking the doctrine of equitable estoppel has the burden of proof." Redwing, 363 S.W.3d at 460.

The distinction between fraudulent concealment and equitable estoppel is germane. Fraudulent concealment applies when a plaintiff did not know of his or her injury because the defendant concealed it. See Fahrner, 48 S.W.3d at 145-46. Equitable estoppel applies when "the plaintiff has already discovered his injury -- or should have discovered it," and is induced not to file a timely suit. Id. at 146. "A clear example [of equitable estoppel], and the one most prominent in the case law, is a defendant's promise not to plead the statute of limitations, which he breaks once the plaintiff has waited for the statute to expire before filing his complaint." Id. at 145 (citing Am. Mut. Liab. Ins. Co. v. Baxter, 357 S.W.2d 825, 827 (Tenn. 1962)).

Plaintiffs assert that the equitable estoppel exception tolled the running of "the various statutes of limitation[s]" governing their claims until September 1, 2018. (ECF No. 41 at 8-10.) They assert that Concorde induced them not to file a timely suit in several ways and at several times: (1) during enrollment, by repeatedly representing that the HIM program would be accredited by graduation; (2) after graduation, by repeatedly representing that the HIM program would be accredited within a reasonable time; and (3) by promising, in

55

the June 2017 Letter, to refund Plaintiffs' tuition if the HIM program was not accredited by September 1, 2018. (Id.) Plaintiffs assert that all of those representations, "especially the promise of a full refund of each Plaintiff's tuition," induced them to delay filing suit against Concorde. (Id.) They assert that they did not become aware that Concorde had misled them until after September 1, 2018, when Plaintiffs asked that Concorde refund their tuition and Concorde refused. (Id.)

Equitable estoppel requires "conduct specifically designed to prevent the plaintiff from suing in time." Fahrner, 48 S.W.3d at 145. "Evidence of vague statements or ambiguous behavior by a defendant will not carry the day for a plaintiff asserting equitable estoppel." Hardcastle, 170 S.W.3d at 85. The representations on which Plaintiffs base their claim to equitable estoppel -- that the HIM program would be accredited in the future, or that Concorde would refund tuition if it was not -- were not specifically designed to induce Plaintiffs not to file a timely suit. They do not resemble the kinds of representations in which Tennessee courts have applied the equitable estoppel exception.

The equitable estoppel exception typically applies to "misrepresentation[s] dealing with the actual filing of a lawsuit." Holcomb v. Sverdrup Tech., Inc., No. M2000-00536-

56

COA-R3-CV, 2001 WL 1386093, at *6 (Tenn. Ct. App. Nov. 8, 2001). "Examples of circumstances which have prompted the courts to invoke the doctrine of equitable estoppel to prevent a defendant from asserting a statute of limitations defense include: (1) when a defendant promises not to assert a statute of limitations defense, (2) when a defendant promises to pay or otherwise satisfy the plaintiff's claim without requiring the plaintiff to file suit, and (3) when a defendant promises to settle a claim without litigation following the conclusion of another proceeding between the defendant and a third party." Redwing, 363 S.W.3d at 460-61 (citing Am. Mut. Liab. Ins. Co., 357 S.W.2d at 827, Brick Church Transmission, Inc. v. S. Pilot Ins. Co., 140 S.W.3d 324, 335 (Tenn. Ct. App. 2003), and Hardcastle, 170 S.W.3d at 85-86).

In several instances, Tennessee courts have applied the equitable estoppel exception where plaintiffs had made claims for payment and were unequivocally told the claims would be paid. See Laxmi Hospitality Grp., LLC v. Narayan, No. M2018-00450-COA-R3-CV, 2018 WL 6657305, at *8-10 (Tenn. Ct. App. Dec. 18, 2018) (equitable estoppel applied where defendants repeatedly "promised to pay their debt" owed to plaintiff on a business loan "and asked [plaintiff] to give them more time in which to pay"); Kesterson v. Jones, No. E2013-02092-COA-R3-CV, 2015 WL 2445968, at *1-4 (Tenn. Ct. App. May 21, 2015)

(equitable estoppel applied where defendants "offered repeated assurances before and after the claimed limitations period that they would repay the debt" owed to plaintiff on a loan note when they were able); Hawks v. CD Dev., LLC, No. W2013-00499-COA-R3-CV, 2013 WL 5432851, at *1-4 (Tenn. Ct. App. Sept. 25, 2013) (equitable estoppel applied where defendant "clearly and unequivocally told [plaintiff] he would pay" an outstanding invoice for architectural work on a restaurant property "if [plaintiff] released [his] lien on the [] property"). Tennessee courts have also applied the exception where plaintiffs who made claims for payment were told their claims were under consideration. See Ne. Knox Util. Dist., 206 S.W.3d at 460-62 (genuine dispute of material fact existed about whether equitable estoppel applied where plaintiff subcontractor was told its claim for extra compensation for work done was "acknowledged and is being evaluated").

Plaintiffs ask the Court to extend the equitable estoppel exception further, to representations that are neither about the possibility of litigation nor about any specific, articulated claim for payment. Plaintiffs' strongest case for equitable estoppel rests on the June 2017 Letter, in which Concorde's Memphis campus president informed Plaintiffs that Concorde would "issue [] a full refund of tuition and other fees" if the HIM program did "not obtain accreditation by

58

September 1, 2018." (ECF No. 23 ¶ 64.) That letter contained a specific promise to pay if a specific event did not occur. However, it did not state or imply that the promise was made to induce Plaintiffs not to file suit. It was not in response to a claim for payment. Plaintiffs nowhere allege that they requested a tuition refund at any time before September 2018. (See id. ¶ 70.)

Concorde's representations in the June 2017 Letter, and its other pre- and post-graduation representations about the HIM program's accreditation status, resemble ongoing negotiations or attempts to remedy a wrong. The Tennessee courts "do[] not understand the general rule to be that any effort by a wrongdoer to remedy the effect of the wrongdoing would effectively bar the defense of the statute of limitations." Bernard v. Houston Ezell Corp., 968 S.W.2d 855, 862 (Tenn. Ct. App. 1997). Tennessee courts have declined to apply the equitable estoppel exception where defendants have made representations or taken actions during continuing negotiations between the parties that do not rise to the level of specific inducements to delay suit. See id. (equitable estoppel did not apply where defendant performed some "corrective work" but did not "represent[], promise[] or contract[] to remedy all of the subject defects in exchange for plaintiffs' delay in filing suit"); Yater v. Wachovia Bank of

59

Ga., N.A., 861 S.W.2d 369, 372 (Tenn. Ct. App. 1993) (equitable estoppel did not apply where "there were ongoing negotiations between plaintiff and [defendant] Bank" after plaintiff informed defendant about erroneous charges on his credit card statements, but "[t]here [was] nothing in [the] record to indicate any act by Bank to induce plaintiff to forego any legal action"); see also Murphy v. Allstate Indem. Co., No. 1:13-cv-108, 2014 WL 1024165, at *3 (E.D. Tenn. Mar. 17, 2004) ("If limitations periods were to toll merely because further negotiation, inspections, and adjustments occur, it would defeat the purpose of the limitations period.").

"[E]stoppels are not favored" in Tennessee. Hardcastle, 170 S.W.3d at 84-85; see also Redwing, 363 S.W.3d at 456 (in Tennessee, "courts construe exceptions to statutes of limitations carefully to assure that they are not extended beyond their plain meaning") (citing Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn. 2006)). The Court will not extend the equitable estoppel exception further than the Tennessee courts have. Plaintiffs have not established that Concorde made specific representations designed to induce them not to file a timely suit. The equitable estoppel exception does not toll the running of the statutes of limitations for Plaintiffs' claims.

**B.   Merits Arguments**

Concorde argues that six of Plaintiffs' seven claims --
the fraud, TCPA, negligent misrepresentation, promissory
estoppel, breach-of-contract, and negligence claims -- fail to
state a claim upon which relief can be granted for reasons
unrelated to timeliness. (ECF No. 30-1 at 11-19.) Because the
TCPA and negligent misrepresentation claims are time-barred,
the Court considers only Concorde's arguments for dismissal of
the fraud, promissory estoppel, breach-of-contract, and
negligence claims.

**1.   Fraud**

The elements of fraud are: (1) "an intentional
misrepresentation with regard to a material fact"; (2) "the
representation was made knowingly" or "recklessly"; (3) "the
plaintiff reasonably relied on the misrepresentation and
suffered damage"; and (4) "the misrepresentation relates to an
existing or past fact" or "a promise of future action without
the present intention to carry out the promise." Stacks, 812
S.W.2d at 592 (quotation marks and citations omitted). A fraud
claim based on a promise of future action is sometimes called a
"promissory fraud" claim. Id.; see also Hood Land Tr. v.
Hastings, No. M2009-02625-COA-R3-CV, 2010 WL 3928647, at *7
(Tenn. Ct. App. Oct. 5, 2010) (citing Shahrdar v. Global Hous.,
Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)).

A fraud claim in federal court is governed by the Rule 9(b) pleading standard.  Thompson v. Bank of Am., N.A., 773 F.3d 741, 751 (6th Cir. 2014).  Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake.  Mistake, intent, knowledge, and conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

In their fraud claim, Plaintiffs allege that Concorde made several harmful misrepresentations about the HIM program.  (See ECF No. 23 ¶¶ 91-95.)  They allege, inter alia, that, after graduation, Concorde represented that the HIM program would be accredited "soon" or within a reasonable time; that Concorde would provide sufficient remedial training to prepare Plaintiffs to sit for the RHIT exam; and that, if the HIM program was not accredited by September 1, 2018, Concorde would refund Plaintiffs' tuition.[8]  (See id. ¶¶ 61, 64, 66, 68.)

Concorde argues that Plaintiffs fail to state a fraud claim upon which relief can be granted because: (1) Plaintiffs do not plead Concorde's alleged misrepresentations with particularity; and (2) Plaintiffs do not plead that Concorde's

---

[8] Plaintiffs also allege that Concorde repeatedly misrepresented the HIM program's existing or future accreditation status before Plaintiffs graduated.  (See ECF No. 23 ¶¶ 23, 26, 31, 33, 35-36, 38, 41, 43-45, 47, 49, 52, 56-57.)  As discussed supra, Plaintiffs' fraud claim is time-barred to the extent based on those pre-graduation representations.  See section IV.A.2.a.

alleged misrepresentations were about past or existing facts or were forward-looking promises with no present intent to perform. (See ECF No. 30-1 at 12-16.)

Concorde argues that Plaintiffs do not plead Concorde's alleged misrepresentations with particularity. (See ECF No. 30-1 at 12-13.) To plead a misrepresentation with particularity, a plaintiff "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008) (quotation marks and citation omitted); see also Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) ("[A]t a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud.") (citing United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)).

Plaintiffs plead the misrepresentations underlying their fraud claim with particularity. They allege that, "[a]fter [they] graduated, Concorde repeatedly assured Plaintiffs the [HIM] program would be accredited soon, assurances upon which Plaintiffs reasonably relied. These assurances were made via email, in person, and the letters described herein. Concorde continued to fail for years, however, to achieve

accreditation." (ECF No. 23 ¶ 61; <u>see also</u> <u>id.</u> ¶ 68.) Those misrepresentations are pled with particularity. Plaintiffs specify the statements they contend were fraudulent: that Concorde assured them the HIM program would be accredited "soon." (ECF No. 23 ¶ 61.) They identify the speaker: Concorde. (<u>Id.</u>) That Plaintiffs do not identify which specific Concorde representatives made the statements is immaterial. Under Rule 9(b), "a complaint that identifies a particular corporate defendant as well as the 'time, place, and content of the alleged misrepresentation' need not also identify the corporation's individual employee who made the alleged fraudulent misrepresentation." <u>Newberry v. Serv. Experts Heating & Air Conditioning, LLC</u>, Nos. 18-6028, 19-5110, 2020 WL 1062678, at *10 (6th Cir. Mar. 5, 2020) (quoting <u>United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.</u>, 501 F.3d 493, 507 (6th Cir. 2007)).

Plaintiffs plead where the statements about accreditation status were made: via email, in person, and in letters. (ECF No. 23 ¶ 61.) They plead when the statements were made: "[a]fter Plaintiffs graduated." (<u>Id.</u>) Plaintiffs do not specify the exact dates on which the statements were made. However, in applying Rule 9(b)'s requirement that a plaintiff identify when the alleged fraud occurred, "[c]ourts are [] more lenient when the alleged wrong did not occur at a discrete time

and place and instead 'the transactions involved are complex or cover a long period of time.'" <u>Pascarella v. Swift Transp. Co.</u>, 694 F. Supp. 2d 933, 941 (W.D. Tenn. 2010) (quoting <u>In re Eli Lilly & Co., Prozac Prods. Liab. Litig.</u>, 789 F. Supp. 1448, 1456 (S.D. Ind. 1992)); <u>see also, e.g.</u>, <u>Carroll v. TDS Telecomm. Corp.</u>, No. 1:17-cv-1127, 2017 WL 6757566, at *7 (W.D. Tenn. Dec. 29, 2017) (plaintiff's allegation that defendant committed fraud in advertisements that "were ongoing for a period of time" would have been "stronger with the exact dates that Plaintiff read these statements," but was "sufficient to put Defendant on notice of the particular statements she refers to"); <u>Colbert & Winstead, PC 401(k) Plan v. AIG Fin. Advisors, Inc.</u>, No. 3:07-cv-1117, 2008 WL 2704367, at *12 (M.D. Tenn. July 8, 2008) (plaintiff's allegation that defendant committed fraud "during a specified six-month period" was sufficient to meet the "heightened pleading requirement of Rule 9(b)"). Plaintiffs' pleading of a time during which the statements were made is "pled with enough specificity to put defendant[] on notice as to the nature of the claim." <u>Williams</u>, 681 F.3d at 803. Plaintiffs explain why the statements about accreditation status were fraudulent: because "Concorde continued to fail for years . . . to achieve accreditation." (ECF No. 23 ¶ 61.)

Plaintiffs plead that, in the June 2017 Letter, Concorde's Memphis campus president falsely represented that Concorde

"would provide Plaintiffs a remedial course of study sufficient to prepare them to sit for and pass the RHIT certification exam" and "would refund Plaintiffs' tuition" if the HIM program were not accredited by September 1, 2018.  (Id. ¶¶ 64, 92.) Plaintiffs allege that Concorde did not follow through on those representations.  (Id. ¶¶ 70, 77.)   The Amended Complaint reproduces the June 2017 Letter, which states, in relevant part, that:

> If the HIM program achieves programmatic accreditation prior to the end of its candidacy period, all past and future graduates of the HIM program will be eligible to take the RHIT exam. Concorde will offer additional training and remediation for all graduates in preparation for the exam, at no charge.
>
> We want you to know that should the program not obtain accreditation by September 1, 2018, Concorde Career College will issue you a full refund of tuition and other fees, and any applicable grants. You may retain your educational credential.

(Id. ¶ 64.)  The misrepresentations in the June 2017 Letter are pled with particularity.  Plaintiffs specify the fraudulent statements in the letter, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent.  See Frank, 547 F.3d at 570.

Concorde argues that Plaintiffs do not plead misrepresentations about past or existing facts or forward-looking promises with no present intent to perform.  (ECF No. 30-1 at 14-16.)  A fraud claim in Tennessee must be based on

66

one (or both) of those types of statements.   See Stacks, 812 S.W.2d at 592.

Plaintiffs do not plead actionable misrepresentations about past or existing facts.   They allege several pre-graduation misrepresentations about the HIM program's existing accreditation status, but as discussed supra, Plaintiffs' fraud claim is time-barred to the extent based on those claims.   See section IV.A.2.a.

Plaintiffs plead that Concorde made forward-looking promises with no present intent to perform.   They plead that Concorde made forward-looking promises about the HIM program becoming accredited "soon."   (ECF No. 23 ¶¶ 61, 68.)   They plead that, in the June 2017 Letter, Concorde's Memphis campus president made forward-looking promises about providing a remedial course and refunding tuition.   (See id. ¶ 64.) Concorde does not dispute that those statements were forward-looking promises, but argues that Plaintiffs fail to adequately plead that the statements were made with no present intent to perform.   (See ECF No. 30-1 at 14-16; ECF No. 45 at 19-20.)

To plead promissory fraud, a "plaintiff must prove more than a subsequent failure to keep the promise."   Jack Tyler Eng'g Co. v. Colfax Corp., No. 10-cv-2373, 2011 WL 6372827, at *4 (W.D. Tenn. Dec. 20, 2011) (quoting Kelly v. Int'l Capital Res., Inc., 231 F.R.D. 502, 517-18 (M.D. Tenn. 2005)).   The

67

plaintiff "must plead facts to show that at the time the promise was made, [the defendant] had no intention to carry it out." Id.

Rule 9(b) allows that "intent . . . may be alleged generally." Fed. R. Civ. P. 9(b). "The concept behind this portion of Rule 9(b) is an understanding that any attempt to require specificity in pleading a condition of the human mind would be unworkable and undesirable." 5A Charles A. Wright et al., Federal Practice and Procedure § 1301 (4th ed. 2020). Although intent may be pled "generally" under Rule 9(b), "pleadings regarding the conditions of a person's mind, including malice and intent, remain bound by the plausibility requirement of Rule 8" of the Federal Rules of Civil Procedure, as enunciated by the Supreme Court in Twombly and Iqbal. Mourad v. Marathon Petrol. Co., 654 F. App'x 792, 798 (6th Cir. 2016). "[T]he plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" Republic Bank & Tr. Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012) (quoting Iqbal, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Plaintiffs adequately plead that Concorde made forward-looking promises without present intent to perform. They plead, "on information and belief," that, when Concorde made forward-looking promises about accreditation status, remedial training, and refunding tuition, the Concorde representatives who made those statements "knew or had reason to know that the statements that they were making were false and misleading," but made them "because of direct instructions from Concorde's corporate headquarters." (ECF No. 23 ¶ 62; see also ECF No. 41 at 23.) Plaintiffs plead, "on information and belief," that Concorde's representatives "were essentially told that they could assist in Concorde's perpetration of a fraud or risk losing their jobs." (ECF No. 23 ¶ 62.)

Concorde argues that Plaintiffs' pleading of the Concorde representatives' states of mind is inadequate because Plaintiffs do not plead the "factual predicates underlying these beliefs, rendering them implausible." (ECF No. 30-1 at 15.) Plaintiffs do, however, provide a factual basis for their allegation that the Concorde representatives knew their statements were misleading: they were told they could "assist in Concorde's perpetration of a fraud or risk losing their jobs," and made those statements knowing they were false "because of direct instructions from Concorde's corporate headquarters." (ECF No. 23 ¶ 62.)

Concorde argues that this pleading should be disregarded because it is made on "information and belief" without "further factual enhancement." (ECF No. 30-1 at 15 (citing 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B., 727 F.3d 502, 504 (6th Cir. 2013).) The Sixth Circuit has said that information-and-belief pleading typically will not satisfy Twombly and Iqbal's requirement that a complaint "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." Southfield, 727 F.3d at 504, 506 (quoting Iqbal, 556 U.S. at 678) (affirming dismissal of complaint alleging discriminatory treatment of customers by defendant bank where plaintiffs' assertions on "information and belief" that defendant treated similarly situated individuals better than them were "naked assertions devoid of further factual enhancement" that "merely alleged [plaintiffs'] 'belief'"); see also Doe v. Univ. of Dayton, 766 F. App'x 275, 282 (6th Cir. 2019) (in Title IX case alleging gender bias in university disciplinary proceedings, plaintiff's pleading on "information and belief" that "virtually all" sexual misconduct disciplinary proceedings instituted by defendant involved "accused student[s] [who were] male" was "conclusory" and failed to allege the necessary "particularized causal connection between gender bias and [plaintiff's] suspension" required for the cause of action) (emphasis omitted).

70

The Sixth Circuit has left open the question whether information-and-belief pleading remains acceptable under Twombly and Iqbal's plausibility standard when "the facts are peculiarly within the possession of the defendant." In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig., 756 F.3d 917, 931 (6th Cir. 2014) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) ("assuming," without deciding, "the existence of such an exception" to the general rule that information-and-belief pleading does not establish a plausible inference of wrongdoing). In an unpublished opinion, the Sixth Circuit has stated that "[i]t is true that pleading on information and belief may be permissible in certain circumstances," such as when "a plaintiff may lack personal knowledge of a fact, but ha[s] 'sufficient data to justify interposing an allegation on the subject' or [is] required to 'rely on information furnished by others.'" Starkey v. JPMorgan Chase Bank, NA, 573 F. App'x 444, 447-48 (6th Cir. 2014) (quoting 5 Charles A. Wright et al., Federal Practice and Procedure § 1224 (3d ed. 2012)).

District courts in this Circuit "have consistently held that allegations based on information and belief are [] permissible post-Twombly and Iqbal 'where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes

the inference of culpability plausible.'" <u>Moore v. Henderson Cty. Sheriff's Dep't</u>, No. 13-cv-1243, 2014 WL 1745017, at *10 (W.D. Tenn. Apr. 30, 2014) (quoting <u>Cassidy v. Teaching Co.</u>, No. 2:13-cv-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014)); <u>see also</u> <u>Hunter v. Booz Allen Hamilton, Inc.</u>, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019) (in antitrust action, information-and-belief pleading about when defendants entered into alleged no-poach agreements was appropriate where those "documents [were] in the control of Defendants"); <u>Superior Fibers LLC v. Shaffer</u>, No. 2:16-cv-00472, 2016 WL 7469623, at *9-10 (S.D. Ohio Dec. 28, 2016) (in trade secrets action, information-and-belief pleading about "to whom [plaintiff's] competitor sold products, how, and when" was appropriate where "[t]he facts underlying [the] allegations [were] within the control of [non-party competitor] and, likely, Defendant"); <u>see also</u> 5 Wright et al., <u>supra</u>, § 1224 ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the <u>Twombly</u> and <u>Iqbal</u> decisions.").

Plaintiffs' information-and-belief pleading is appropriate here. Plaintiffs allege "on information and belief" that Concorde's representatives were given "direct instructions from Concorde's corporate headquarters" to make representations

about accreditation status, remedial training, and refunding tuition, and did so, knowing they were false, because they were "essentially told that they could assist in Concorde's perpetration of a fraud or risk losing their jobs." (ECF No. 23 ¶ 62.) Plaintiffs allege the rest of the details about Concorde's alleged misrepresentations -- their content, the identity of the speaker, the fraudulent nature of the statements -- on firsthand knowledge. (See ECF No. 23 ¶¶ 61, 64, 68-70, 77.) Who, if anyone, at Concorde directed Concorde's representatives to issue those statements, and why, is information that is in Concorde's possession. See Moore, 2014 WL 1745017, at *10 (in civil rights action alleging unlawful search and seizure, information-and-belief pleading about defendant officers' reasons for initiating a search was appropriate where "the true motive for the officers' entry and search was, and continues to be, wholly in Defendants' possession"); Arista Records, 604 F.3d at 120 ("The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.") (quotation marks and citations omitted). Plaintiffs' information-and-belief pleading in this narrow instance does not preclude their fraud claim.

Concorde argues that the Court cannot plausibly infer that Concorde's forward-looking promises about accreditation status were made without present intent to perform because there is a more plausible explanation for why Concorde made those statements. (See ECF No. 30-1 at 16.) Concorde asserts that "Concorde had every incentive to promptly pursue programmatic accreditation" and that, "when viewed through the lenses of common sense and alternative explanations for Concorde's conduct," the better interpretation of the rationale behind Concorde's post-graduation statements about accreditation status was that Concorde was actively pursuing accreditation status in good faith and that the process "just took longer than expected." (Id.)

In the pleading context, "[t]he plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." Southfield, 727 F.3d at 504 (citing Iqbal, 556 U.S. at 682, and Twombly, 550 U.S. at 567). Sometimes, "the existence of obvious alternative explanations" for a defendant's conduct will illuminate the implausibility of a plaintiff's claim, particularly where the plaintiff alleges only "facts that are merely consistent with liability." Id. at 505; see also Twombly, 550 U.S. at 551-52, 564-70 (plaintiffs' assertion that defendants "entered into a contract, combination

or conspiracy to prevent competitive entry in their respective
. . . markets" was implausible where plaintiffs alleged only
"parallel conduct" that was consistent with innocent
explanations for defendants' behavior).

Concorde's alternative explanation of the rationale for
its post-graduation statements about accreditation status --
that Concorde was actively pursuing accreditation in good faith
and that the process "just took longer than expected" -- is
plausible. (ECF No. 30-1 at 16.) Concorde's explanation may
be more plausible than Plaintiffs' preferred explanation, that
Concorde's representatives asserted that the HIM program would
be accredited soon, knowing those statements were false, on
"direct instructions from Concorde's corporate headquarters."
(ECF No. 23 ¶ 62.) However, Twombly and Iqbal do not require,
or call for, a court to select the most plausible reading of
the allegations in a complaint. "Often, defendants' conduct
has several plausible explanations. Ferreting out the most
likely reason for the defendants' actions is not appropriate at
the pleadings stage." Watson Carpet & Floor Covering, Inc. v.
Mohawk Indus., Inc., 648 F.3d 452, 458 (6th Cir. 2011). A
plaintiff's explanation for a defendant's conduct need only be
among the set of plausible interpretations. See Southfield,
727 F.3d at 505 ("[I]f a plaintiff's claim is plausible, the

availability of other explanations -- even more likely explanations -- does not bar the door to discovery.").

Plaintiffs' explanation of the reasons behind Concorde's forward-looking promises about accreditation status is plausible. Plaintiffs do not allege only "facts that are merely consistent with liability." See id. They expressly allege that Concorde's representatives made statements about accreditation status at the direction of others, while aware of their falsity. (See ECF No. 23 ¶ 62.) The Court takes those allegations as true, as it must at this stage. See Iqbal, 556 U.S. at 678. Taken as true, they provide the necessary "factual content" to allow the Court to "draw the reasonable inference" that Concorde's representatives made those statements without present intent to perform, as required for a promissory fraud claim in Tennessee. Plaintiffs adequately plead their fraud claim.

### 2.   Promissory Estoppel

"Promissory estoppel has frequently been defined as follows: 'a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Chavez, 245 S.W.3d at 404 (quoting Alden v. Presley, 637 S.W.2d 862, 864

(Tenn. 1982)).   The elements of a promissory estoppel claim are: (1) a promise was made; (2) the promise was unambiguous and not unenforceably vague; and (3) the plaintiff reasonably relied on the promise to his or her detriment.   Id.

"Tennessee does not liberally apply the doctrine of promissory estoppel.   To the contrary, it limits application of the doctrine to exceptional cases."   Barnes & Robinson Co. v. OneSource Facility Servs., Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (citing Shedd, 118 S.W.3d at 700).   An "exceptional case" is found only when a defendant's conduct "verges on actual fraud."   Shedd, 118 S.W.3d at 700 (citing Baliles v. Cities Serv., 578 S.W.2d 621 (Tenn. 1979)).

A promissory estoppel claim in Tennessee sounds in fraud and is governed by the Rule 9(b) pleading standard.   See Am. Accessories, Int'l, LLC v. Conopco, Inc., No. 3:15-cv-0049, 2017 WL 52606, at *6 (E.D. Tenn. Jan. 4, 2017); LeBlanc v. Bank of Am., N.A., No. 2:13-cv-20001, 2013 WL 3146829, at *16 (W.D. Tenn. June 18, 2013).   To meet Rule 9(b)'s requirement that the "circumstances constituting fraud" be pled with "particularity," a plaintiff asserting a promissory estoppel claim must "assert when the alleged promise was made [and] who specifically made the alleged promise."   LeBlanc, 2013 WL 3146829, at *16.

In their promissory estoppel claim, Plaintiffs allege that they relied to their detriment on two post-graduation promises by Concorde.  (See ECF No. 23 ¶ 106(c)-(e).)  They allege that Concorde promised that it would provide Plaintiffs an accredited degree "within a reasonable time" and "no later than September 1, 2018."  (Id. ¶ 106(c)-(d).)  They allege that Concorde promised that, "upon obtaining accreditation, Concorde would provide a remedial course of study sufficient to prepare Plaintiffs for the RHIT exam."  (Id. ¶ 106(e).)  They allege that they relied on both of those promises to their detriment by deferring other educational and employment opportunities.[9] (Id. ¶ 107.)

Concorde argues that Plaintiffs fail to state a promissory estoppel claim upon which relief can be granted because: (1) Plaintiffs do not plead Concorde's alleged promises with particularity; (2) Plaintiffs fail to allege that Concorde's promises were made without present intent to perform; and (3) the existence of a contract between Plaintiffs and Concorde bars Plaintiffs' promissory estoppel claim.  (See ECF No. 30-1 at 12-16, 18-19.)

---

[9] Plaintiffs also allege that, before graduation, Concorde made promises about obtaining accreditation for the HIM program.  (See ECF No. 23 ¶ 106(a)-(b).)  As discussed supra, Plaintiffs' promissory estoppel claim is time-barred to the extent based on those pre-graduation promises.  See section IV.A.2.c.

Concorde argues that Plaintiffs do not plead Concorde's alleged promises with particularity. (See ECF No. 30-1 at 12-13.) To plead a promissory estoppel claim with particularity, a plaintiff must "assert when the alleged promise was made [and] who specifically made the alleged promise." LeBlanc, 2013 WL 3146829, at *16. Plaintiffs meet that standard.

Plaintiffs plead that, after graduation, Concorde promised them an accredited degree "within a reasonable time" and "no later than September 1, 2018." (ECF No. 23 ¶ 106(c)-(d).) Plaintiffs plead those promises with particularity. They assert that, "[a]fter [they] graduated, Concorde repeatedly assured Plaintiffs the [HIM] program would be accredited soon, assurances upon which Plaintiffs reasonably relied," that "Plaintiffs also had multiple telephone conversations and exchanged emails with Concorde, whereby Plaintiffs requested updates on accreditation," and that "Concorde repeatedly assured Plaintiffs that the program would be accredited." (Id. ¶¶ 61, 68.) Plaintiffs allege when the promises were made: after graduation. That pleading is "pled with enough specificity to put defendant[] on notice as to the nature of the claim." Williams, 681 F.3d at 803; see also Pascarella, 694 F. Supp. 2d at 941 (in applying Rule 9(b), "[c]ourts are [] more lenient when the alleged wrong did not occur at a discrete time and place and instead . . . cover[ed] a long period of

time") (quotation marks and citations omitted).  Plaintiffs allege who made the promise: Concorde.  That pleading is sufficiently specific.  See Newberry, 2020 WL 1062678, at *10 (citing Bledsoe, 501 F.3d at 506).

Plaintiffs plead that Concorde promised to "provide a remedial course of study sufficient to prepare Plaintiffs for the RHIT exam."  (ECF No. 23 ¶ 106(e).)  Plaintiffs plead that promise with particularity.  They assert that, in the June 2017 Letter, Concorde's Memphis campus president promised that, "[i]f the HIM program achieves programmatic accreditation prior to the end of its candidacy period, all past and future graduates of the HIM program will be eligible to take the RHIT exam.  Concorde will offer additional training and remediation for all graduates in preparation for the exam, at no charge." (Id. ¶ 64.)  Plaintiffs allege "when the alleged promise was made [and] who specifically made the alleged promise." LeBlanc, 2013 WL 3146829, at *16.

Concorde argues that Plaintiffs fail to allege that Concorde's promises were made without present intent to perform.  (See ECF No. 30-1 at 14-16.)  Concorde conflates the elements of promissory estoppel with the elements of promissory fraud.  As discussed supra, a promissory fraud claim is a fraud claim based on a promise of future action made without present intent to perform.  See Stacks, 812 S.W.2d at 592.  A

promissory estoppel claim is not a fraud claim per se.  It is
"an alternative theory to recovery on an express contract" that
requires conduct by the defendant that "is akin to fraud."
Sparton Tech., 248 F. App'x at 689-90.  Plaintiffs plead that
the circumstances of Concorde's post-graduation promises to
provide an accredited degree and sufficient remedial training
are "akin to fraud."  They allege that Concorde's
representatives made those promises with knowledge that they
were "false or misleading" because of "direct instructions from
Concorde's corporate headquarters."  (ECF No. 23 ¶ 62.)
Plaintiffs adequately plead conduct "akin to fraud" as the
basis for their promissory estoppel claim.

Concorde argues that the existence of a contract between
Plaintiffs and Concorde bars Plaintiffs' promissory estoppel
claim.  (See ECF No. 30-1 at 18-19.)  "Promissory estoppel is
'an equitable remedy based on a quasi contractual theory,' only
available '[i]n cases in which there is an absence of
consideration between the parties so that there is no valid
contract.'"  Holt v. Macy's Retail Holdings, Inc., 719 F. Supp.
2d 903, 914 (W.D. Tenn. 2010) (quoting Diana Asbury v. Lagonia
Sherman, LLC, No. W2001-01821-COA-R3-CV, 2002 WL 31306691, at
*5 (Tenn. Ct. App. Oct. 15, 2002)).  In their breach-of-
contract claim, Plaintiffs allege, inter alia, that a post-
graduation contract existed between themselves and Concorde in

which Concorde agreed to "provide an adequate remedial program
to enable students to meaningfully prepare for the RHIT exam."
(ECF No. 23 ¶ 111(b).)

Concorde correctly asserts that Plaintiffs would not
ultimately be able to recover damages for both their breach-of-
contract claim and their promissory estoppel claim to the
extent those claims are based on the same promises. (See ECF
No. 30-1 at 18-19.)   At trial, the factfinder would "first
determine whether a valid contract exists between the parties,"
which would determine "whether [Plaintiffs] may rely upon the
theory of promissory estoppel." Calabro v. Calabro, 15 S.W.3d
873, 879-80 (Tenn. Ct. App. 1999).   "Once an express contract
is found . . . the alternative claim of promissory estoppel
becomes moot." Sparton Tech., 248 F. App'x at 690 (citing
Johnson v. Metro. Gov't of Nashville, No. M2001-00633-COA-R3-
CV, 2002 WL 31769125, at *10 (Tenn. Ct. App. Dec. 11, 2002)).

At the pleading stage, the rule is different.   Federal
Rule of Civil Procedure 8 provides that "[a] party may state as
many claims or defenses as it has, regardless of consistency."
Fed. R. Civ. P. 8(d)(3).   Under that rule, "a pleader [] may
set forth inconsistent legal theories in his or her pleading
and will not be forced to select a single theory on which to
seek recovery against the defendant." 5 Wright et al., supra,
§ 1283.   "Thus, for example, federal courts have permitted

plaintiffs to sue on a contract theory and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim or allege fraud or some other tort theory." Id. (collecting cases); see also, e.g., Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission, Inc., No. 5:04-cv-2188, 2007 WL 2463247, at *7 (N.D. Ohio Aug. 28, 2007) ("A claimant may therefore plead for relief under both contract law and quasi-contract law, but she or he cannot recover under both theories.").

Concorde concedes that Plaintiffs are free to plead inconsistent claims in the alternative, but argues that Plaintiffs' promissory estoppel claim should be dismissed because the Amended Complaint does not designate the claim as pled "in the alternative" to Plaintiffs' breach-of-contract claim. (ECF No. 30-1 at 19; ECF No. 45 at 23.) The modern procedural rules replaced "the technical pleading requirements of a bygone era." Southfield, 727 F.3d at 504. Nothing in Rule 8 requires a plaintiff to label inconsistent claims as "alternative" to each other in his or her complaint. Concorde cites no authority imposing that requirement. At this stage, Plaintiffs are free to pursue both their breach-of-contract and promissory estoppel claims, "regardless of consistency." Fed. R. Civ. P. 8(d)(3). Plaintiffs adequately plead their promissory estoppel claim.

### 3.   Breach of Contract

In Tennessee, the elements of breach of contract are: (1) "the existence of a valid and enforceable contract"; (2) "a deficiency in the performance amounting to a breach"; and (3) "damages caused by the breach." Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011) (citing ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). "An enforceable contract requires: (1) adequate consideration; (2) mutual assent of the entering parties; and (3) sufficient definition so as to be enforceable." Setzer v. First Choice Lending Servs., LLC, No. 18-5192, 2018 WL 7500477, at *4 (6th Cir. Sept. 10, 2018) (citing Price v. Mercury Supply Co., 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984)). "A contract 'must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.'" Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001) (quoting Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local # 3-677, 811 S.W.2d 875, 880 (Tenn. 1991)).

A "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008) (quoting Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005)). A complaint need not directly recite the elements of breach of

contract.  See Woodall v. DSI Renal, Inc., No. 11-cv-2590, 2012
WL 1038626, at *7-8 (W.D. Tenn. Mar. 27, 2012).  If it does
not, the court must be able to infer from the complaint all
material elements of breach of contract.  Id. (citing Bishop,
520 F.3d at 519).

In their breach-of-contract claim, Plaintiffs allege that
"Concorde contractually agreed, among other things, to provide
Plaintiffs a programmatically accredited degree upon
graduation, within a reasonable time after graduation, or, in
no event, later than September 1, 2018."  (ECF No. 23 ¶ 110.)
Plaintiffs do not identify a particular document representing
the "contract" between themselves and Concorde.  They assert
that the "actions and various agreements" outlined in the
Amended Complaint "made up the contractual relationship between
the parties."  (ECF No. 41 at 26.)  Plaintiffs allege that
Concorde breached that "contract" by failing to: (1) provide
them with an accredited degree "upon graduation, within a
reasonable time after graduation, or, in no event, later than
September 1, 2018"; (2) "provide an adequate remedial program
to enable students to meaningfully prepare for the RHIT exam";
and (3) "reimburse students for their tuition as agreed upon."
(ECF No. 23 ¶ 111.)

Concorde argues that Plaintiffs fail to state a breach-of-
contract claim upon which relief can be granted because: (1)

85

the written enrollment agreements Plaintiffs signed when they enrolled in the HIM program "contradict their breach of contract claims"; (2) Plaintiffs fail to adequately plead consideration for any of the "various agreements" on which they base their breach-of-contract claim; (3) the parol evidence rule bars Plaintiffs from basing their breach-of-contract claim on any pre-enrollment agreement other than Plaintiffs' written enrollment agreements; (4) the statute of frauds bars Plaintiffs from basing their breach-of-contract claim on any oral pre-enrollment agreements; (5) the damages Plaintiffs seek for their breach-of-contract claim are too speculative; and (6) Tennessee does not recognize breach-of-contract claims based on inadequate educational services. (See ECF No. 30-1 at 2 n.1, 17-18; ECF No. 45 at 4-6, 15, 20-22.)

Concorde argues that the written enrollment agreements Plaintiffs signed when they enrolled in the HIM program "contradict their breach of contract claims." (See ECF No. 30-1 at 2 n.1, 17-18; ECF No. 45 at 4-6.) Concorde attaches each Plaintiff's written enrollment agreement to the Motion to Dismiss. (See ECF No. 31.) The written enrollment agreements do not contain terms about accreditation status, remedial training, or a post-graduation refund of tuition. (See generally id.)

Concorde argues that Plaintiffs' written enrollment agreements are part of the pleadings and may be considered at the motion-to-dismiss stage. (See ECF No. 30-1 at 2 n.1.)  The Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Armengau, 7 F. App'x at 344.  Documents attached to a motion to dismiss may be considered part of the pleadings if they are "referred to in a complaint and central to the claim."  Id.

Plaintiffs' written enrollment agreements with Concorde are not properly before the Court.  Although documents "referred to in a complaint and central to the claim" may be considered part of the pleadings, the complaint must, at minimum, make specific reference to the documents.  See First Horizon Nat'l Corp. v. Houston Cas. Co., No. 15-cv-2235, 2016 WL 1749802, at *4 (W.D. Tenn. Apr. 21, 2016) (civil investigative demand letter was not part of the pleadings where "[t]here [was] no specific reference to a CID anywhere in the Complaint"); Rhynes v. Bank of Am., No. 12-cv-2683, 2013 WL 12095158, at *6-7 (W.D. Tenn. Mar. 26, 2013) (payment plan that allegedly modified a contract between plaintiff and defendant was not part of the pleadings where plaintiff's complaint "d[id] not specifically mention the [payment plan] or any written agreement that evidences the [] modification").

The Amended Complaint nowhere refers to Plaintiffs'
written enrollment agreements.  In their response to the Motion
to Dismiss, Plaintiffs disclaim reliance on the written
enrollment agreements as a basis for their breach-of-contract
claim.  (See ECF No. 41 at 26 ("[T]he enrollment agreements are
not the contracts on which Plaintiffs base their breach of
contract claim.").)  Plaintiffs' breach-of-contract claim is
based solely on other "various" written and oral agreements
that Plaintiffs allege formed a "contract" between themselves
and Concorde.  (See ECF No. 23 ¶ 110; ECF No. 41 at 26.)

Plaintiffs' written enrollment agreements are not part of
their pleadings.  The Court could consider the written
enrollment agreements at this stage only by converting
Concorde's Motion to Dismiss into a Motion for Summary
Judgment.  See Fed. R. Civ. P. 12(d).  The Court has the
discretion to decide whether it is appropriate to exclude
matters outside the pleadings or to convert the Motion.  See
Rhynes, 2013 WL 12095158, at *7.  It would be premature to
treat the Motion to Dismiss as a Motion for Summary Judgment at
this early stage of litigation.  Plaintiffs' written enrollment
agreements are excluded from the pleadings and are not
considered in deciding the Motion to Dismiss.

Concorde argues that Plaintiffs fail to adequately plead
consideration for any of the "various agreements" on which they

base their breach-of-contract claim. (<u>See</u> ECF No. 45 at 20-
22.) "An enforceable contract requires . . . adequate
consideration." <u>Setzer</u>, 2018 WL 7500477, at *4.
"Consideration exists when a party does something that he or
she is under no legal obligation to do or refrains from doing
something which he or she has a legal right to do." <u>Bratton v.</u>
<u>Bratton</u>, 136 S.W.3d 595, 602 (Tenn. 2004) (citing <u>Brown Oil Co.</u>
<u>v. Johnson</u>, 689 S.W.2d 149, 151 (Tenn. 1985)). "Consideration
may be either a benefit to the promisor or a detriment to or
obligation upon the promisee." <u>Id.</u> "Any consideration,
however small, will support a promise." <u>Regions Bank v. Bric</u>
<u>Constructors, LLC</u>, 380 S.W.3d 740, 761 (Tenn. Ct. App. 2011)
(quoting <u>GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.</u>, 330
S.W.3d 166, 188 (Tenn. Ct. App. 2010)).

Plaintiffs plead no consideration for many of the
"various" written and oral representations on which they
purport to base their breach-of-contract claim. (<u>See</u> ECF No.
23 ¶¶ 33, 35, 38, 41, 44-47, 56, 61, 64; ECF No. 41 at 26.)
For example, Plaintiffs allege that, after they had enrolled in
the HIM program, the HIM program director informed different
groups of Plaintiffs, at different times, that the HIM program
was unaccredited and that the program would be accredited by
graduation. (<u>See</u> ECF No. 23 ¶¶ 38, 56.) Without more, those
representations do not form a contractual relationship.

Plaintiffs do not allege that they took any action in response to those representations that constituted a benefit to Concorde or a detriment to them.   No consideration for those representations can be inferred from the allegations of the Amended Complaint.   See Bishop, 520 F.3d at 519 ("[T]he complaint must contain either direct or inferential allegations respecting all material elements.") (quotation marks and citation omitted).   Those representations do not give rise to a "valid and enforceable contract."   Winters, 354 S.W.3d at 291.

Although Plaintiffs fail to allege consideration for many of the representations on which they purport to base their breach-of-contract claim, Plaintiffs adequately plead the existence of two enforceable contracts.   First, Plaintiffs plead that:

> Prior to enrollment, most students, including Plaintiffs, were assured that, provided they completed the curriculum, they would graduate in fifteen (15) to sixteen (16) months with an accredited degree that would permit them to sit for the [RHIT] exam and earn an RHIT certification. . . . Concorde made this assurance with the intent to induce Plaintiffs to enroll in their HIM degree program in an effort to obtain a financial benefit from Plaintiffs in the form of tuition, fees, and expenses.   Plaintiffs relied on this assurance in deciding to enroll.

(ECF No. 23 ¶ 23.)

"[D]raw[ing] all reasonable inferences in favor of the plaintiff," Bassett, 528 F.3d at 430, Plaintiffs plead an

enforceable contract.  They allege a promise by Concorde (to provide an accredited degree) and a return obligation undertaken by Plaintiffs (to agree to enroll in the HIM program).  That return obligation satisfies the consideration requirement, which is supported by "[a]ny consideration, however small."  Regions Bank, 380 S.W.3d at 761.  The terms of that contract (hereafter, the "Pre-Enrollment Agreement") are alleged with "sufficient explicitness" to allow the Court to "perceive what are the respective obligations of the parties." HCA Health Servs. of Tenn., Inc., 46 S.W.3d at 196.

Second, Plaintiffs plead that, after graduation, several Plaintiffs executed an "Accreditation Disclosure" that they allege "made many of the same representations as in the June 2017 [L]etter" in which Concorde's Memphis campus president promised that Concorde would provide remedial training once the HIM program became accredited and would refund tuition if accreditation were not obtained by September 1, 2018. (See ECF No. 23 ¶ 66.)  Plaintiffs allege that "Concorde induced those Plaintiffs who did execute the Accreditation Disclosure to do so by stating or implying that a refresher course, to assist them in passing the RHIT exam, was contingent on the execution of the disclosure."  (Id.)

Plaintiffs do not specify the precise terms of the "Accreditation Disclosure" some of them allegedly signed.

91

However, reading the complaint "in the light most favorable to the plaintiff," Bassett, 528 F.3d at 430, the Court infers that the Accreditation Disclosure contained the same two material representations as the June 2017 Letter, i.e., that Concorde would provide remedial training once the HIM program became accredited and would refund tuition if accreditation were not obtained by September 1, 2018. (See ECF No. 23 ¶ 64.) Plaintiffs adequately plead that the Accreditation Disclosure or the communications surrounding it constitutes an enforceable contract.  They allege promises by Concorde (to provide remedial training and to refund tuition) and a return obligation by Plaintiffs (signing the Accreditation Disclosure).   That return obligation satisfies the consideration requirement, which is supported by "[a]ny consideration, however small." Regions Bank, 380 S.W.3d at 761.   The terms of that contract (hereafter, the "Post-Graduation Agreement") are alleged with "sufficient explicitness" to allow the Court to "perceive what are the respective obligations of the parties." HCA Health Servs. of Tenn., Inc., 46 S.W.3d at 196.

Concorde argues that the parol evidence rule bars Plaintiffs from basing their breach-of-contract claim on any pre-enrollment agreement other than Plaintiffs' written enrollment agreements.  (See ECF No. 45 at 21.)   Concorde

asserts that Plaintiffs' written enrollment agreements contain an integration clause and are therefore the final and complete set of enrollment agreements between Plaintiffs and Concorde. (Id.)

"As a general rule, parol evidence is not admissible to contradict, vary, or alter a written contract, when a written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegations thereof." Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 892 (Tenn. Ct. App. 2000) (citing Whelchel Co. v. Ripley Tractor Co., 900 S.W.2d 691 (Tenn. Ct. App. 1995), and Airline Constr., Inc. v. Barr, 807 S.W.2d 247 (Tenn. Ct. App. 1990)).  In essence, Concorde argues that the Pre-Enrollment Agreement, in which Plaintiffs agreed to enroll in the HIM program and Concorde promised that Plaintiffs would receive an accredited degree, is impermissible parol evidence because it conflicts with the terms of Plaintiffs' written enrollment agreements, which contained no terms about accreditation status.  (See ECF No. 45 at 21.)  Concorde's parol evidence argument may be appropriate at summary judgment. However, as discussed supra, Plaintiffs' written enrollment agreements are not part of the pleadings.  At this stage, the Court will not consider arguments based on the written enrollment agreements.

Concorde argues that the statute of frauds bars Plaintiffs from basing their breach-of-contract claim on any oral pre-enrollment agreements. (See ECF No. 45 at 21-22.) Tennessee's statute of frauds states that "[n]o action shall be brought . . . [u]pon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract . . . unless the promise or agreement . . . shall be in writing." Tenn. Code Ann. § 29-2-101(a)(5). Concorde argues that the Pre-Enrollment Agreement is unenforceable under Tennessee's statute of frauds because the HIM program was a 60-week program, and Concorde's promise in the Pre-Enrollment Agreement that Plaintiffs would receive an accredited degree therefore could not have been performed within a year.[10]   (See ECF No. 45 at 21-22.)

"Because courts generally try to uphold contracts rather than defeat them, [Tenn. Code Ann.] § 29-2-101(a)(5) is narrowly construed." Davidson v. Holtzman, 47 S.W.3d 445, 453 (Tenn. Ct. App. 2000) (citing Price, 682 S.W.2d at 932). "[T]here must be evidence to demonstrate that the parties specifically agreed that the contract absolutely would not be performed within one year for it to run afoul of the statute of

---

[10] Plaintiffs do not specify whether the Pre-Enrollment Agreement was written or oral. (See ECF No. 23 ¶ 23.)  They do not allege that it was written.  The Court assumes, for the purpose of evaluating Concorde's statute-of-frauds argument, that the Pre-Enrollment Agreement was oral.

frauds." <u>Birdwell v. Psimer</u>, 151 S.W.3d 916, 919 (Tenn. Ct. App. 2004) (citing <u>Johnston v. Cincinnati N.O. & T.P. Ry.</u>, 240 S.W. 429 (Tenn. 1922)).

The Amended Complaint does not demonstrate that Plaintiffs and Concorde specifically agreed that the Pre-Enrollment Agreement "absolutely would not be performed within one year." <u>Id.</u>  The HIM program appears, in its normal course, to be a fifteen- to sixteen-month program.  (<u>See</u> ECF No. 23 ¶¶ 23, 34, 39, 46.)  However, it is not clear from the Amended Complaint whether it would have been possible for any of the Plaintiffs to have completed the program in less than a year by, for example, completing coursework at an accelerated rate.  For the statute of frauds to bar the enforcement of a contract, "[i]t is not sufficient to show that it is not reasonably possible to perform the contract within a year, or that such would probably not be done, or that a certain contingency which would bring it within the year time period did not occur."  <u>Birdwell</u>, 151 S.W.3d at 919.  The Court cannot conclude, at this juncture and on the facts alleged, that the statute of frauds bars Plaintiffs from enforcing the Pre-Enrollment Agreement.

Concorde argues that the damages Plaintiffs seek for their breach-of-contract claim are too speculative.  (<u>See</u> ECF No. 45 at 15, 22.)  The damages Plaintiffs seek include:

(a) The full cost of tuition fees, expenses, and the costs of purchased materials paid to [Concorde] for the HIM program;

(b) Any and all interest incurred as a result of student loans that Plaintiffs were induced to take in order to participate in the HIM program;

(c) The value of all time expended in participation in the program during which Plaintiffs could have been otherwise gainfully employed or pursuing alternative educational opportunities;

(d) The value of lost opportunities for job positions for which Plaintiffs were passed over that they would have obtained but-for [Concorde's] failure to confer upon them an accredited HIM degree; [and]

(e) The value of lost earnings over the reasonable time in which Plaintiffs could have reasonably anticipated being employed in the HIM field with an RHIT certification.[11]

(ECF No. 23 ¶ 128(a)-(e).)  Concorde asserts that the damages Plaintiffs seek under categories (c) through (e) above -- "the value of time spent in the HIM program, lost opportunities on account of attending the HIM program[,] and lost wages" -- are "too speculative to be recovered under a breach of contract theory under Tennessee law."  (ECF No. 45 at 15, 22.)

"Damages in breach of contract cases are nothing more than payment in money for actual losses caused by the breach of contract."  Custom Built Homes v. G.S. Hinsen Co., No. 01A01-9511-CV-00513, 1998 WL 960287, at *4 (Tenn. Ct. App. Feb. 6,

---

[11] Plaintiffs also seek treble damages, punitive damages, and attorney's fees, but represent that they "do not seek those categories of damages for the breach of contract counts."  (ECF No. 41 at 15 n.2.)

1998).   "In Tennessee, parties are not entitled to recover uncertain, contingent, or speculative damages." Doe v. Belmont Univ., 334 F. Supp. 3d 877, 900 (M.D. Tenn. 2018) (citing Kindred v. Nat'l Coll. of Bus. and Tech., Inc., No. W2014-00413-COA-R3-CV, 2015 WL 1296076, at *6 (Tenn. Ct. App. Mar. 19, 2015), and Moore Constr. Co. v. Clarksville Dep't of Elec., 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985)).   "Damages will be considered uncertain or speculative when their existence is uncertain, or when the proof is insufficient to enable a trier of fact to make a fair and reasonable assessment of damages." Custom Built Homes, 1998 WL 960287, at *4 (citing Wilson v. Farmers Chem. Ass'n, Inc., 444 S.W.2d 185, 189 (Tenn. 1969)).

Some of the damages Plaintiffs seek for their breach-of-contract claim are impermissibly speculative.   Their claim for damages for "lost opportunities" and "lost earnings," for example, is too speculative to support a breach-of-contract claim in Tennessee.   See Kindred, 2015 WL 1296076, at *7 (in breach-of-contract claim by student plaintiff who sued university after cancellation of her enrollment, plaintiff's "claimed damages of the expected value of her chosen course of studies [were] uncertain and impermissibly speculative as a matter of law") (quotation marks and citation omitted); Belmont Univ., 334 F. Supp. 3d at 900-01 (student plaintiff who was suspended from university could not obtain damages for "loss of

educational opportunities, past and future economic loss[,]" and "loss of future career prospects").

Other damages Plaintiffs seek are reasonably certain and calculable. "Courts will allow damages for breach of contract even where it is impossible to prove the exact amount of damages." Moore Constr. Co., 707 S.W.2d at 15 (citing Provident Life and Accident Ins. Co. v. Globe Indem. Co., 3 S.W.2d 1057, 1058 (Tenn. 1928)). "All that is required is proof with a reasonable degree of certainty." Id. (citing Buice v. Scruggs Equip. Co., 267 S.W.2d 119, 125-26 (Tenn. Ct. App. 1953)). Plaintiffs seek damages corresponding to the "full cost of tuition fees, expenses, and the costs of purchased materials paid to [Concorde] for the HIM program" and the "interest incurred as a result of student loans that Plaintiffs were induced to take in order to participate in the HIM program." (ECF No. 23 ¶ 128 (a)-(b).)  Those amounts can be precisely or reasonably determined. Concorde does not argue otherwise. Plaintiffs plead a valid basis for damages for their breach-of-contract claim.

Concorde argues that Tennessee does not recognize breach-of-contract claims based on inadequate educational services. (See ECF No. 30-1 at 18.) Concorde argues, therefore, that the Post-Graduation Agreement, in which Concorde agreed to provide remedial training to Plaintiffs to allow them to take the RHIT

exam, cannot serve as the basis of their breach-of-contract claim. (Id.)

Concorde does not support its argument with authority. The Sixth Circuit has said that "[c]ourts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services." Hutchings v. Vanderbilt Univ., 55 F. App'x 308, 310 (6th Cir. 2003) (citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 226 (1985), and Ross v. Creighton Univ., 957 F.2d 410, 414 (7th Cir. 1992)). Concorde cites no federal or state authority providing that, as a matter of law, breach-of-contract claims for inadequate educational services are not recognized in Tennessee. The Court cannot conclude, at this stage, that the Post-Graduation Agreement cannot serve as the basis of a valid breach-of-contract claim. Plaintiffs adequately plead their breach-of-contract claim.

### 4. Negligence

The elements of negligence are: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care; (3) injury; (4) causation in fact; and (5) proximate causation. Power & Tel. Supply Co. v. SunTrust Banks, Inc., 447 F.3d 923, 932 (6th Cir. 2006) (citing Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993)).

In their negligence claim, Plaintiffs allege that Concorde breached a duty of care "to provide reasonable and adequate remedial training to allow a reasonable person, similarly situated to Plaintiffs, to sit for and pass the RHIT exam within a reasonable time."[12]   (ECF No. 23 ¶ 118.)   They allege that Concorde incurred that duty "as of the date of notifying Plaintiffs of their programmatic accreditation on December 31, 2018," and breached the duty when it subsequently "failed to provide adequate remedial education and training."   (Id. ¶¶ 119-20.)

Concorde argues that Plaintiffs fail to state a negligence claim upon which relief can be granted because Plaintiffs do not adequately plead that Concorde owed a duty to provide remedial training independent of its alleged contractual duties to Plaintiffs.   (See ECF No. 30-1 at 18-19; ECF No. 45 at 23-25.)   That argument is well-taken.   "Duty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm."   Bissinger, 2014 WL 2568413, at *8 (citing Satterfield, 266 S.W.3d at 355).   A plaintiff asserting a negligence claim must plead that the

---

[12] Plaintiffs also allege that Concorde breached a duty of care "to competently obtain programmatic accreditation for the HIM program within the various timeframes identified by [Concorde]."   (ECF No. 23 ¶ 114.)   As discussed supra, Plaintiffs' negligence claim is time-barred to the extent it is based on a breach of that alleged duty.   See section IV.A.2.d.

defendant "violate[d] a duty, independent of [] contract, arising from wider principles of social responsibility." Thomas & Assocs., Inc. v. Metro. Gov't of Nashville, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. 2003).

The question of duty is "entirely a question of law for the court." Power & Tel. Supply Co., 447 F.3d at 932. "The court must determine whether[,] 'upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others -- or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.'" Id. (quoting Bradshaw, 854 S.W.2d at 869-70).

Plaintiffs allege that Concorde "owed Plaintiffs a [] duty of care to provide reasonable and adequate remedial training sufficient to allow a reasonable person, similarly situated to Plaintiffs, to sit for and pass the RHIT exam within a reasonable time." (ECF No. 23 ¶ 118.) Plaintiffs do not explain the legal basis of that alleged duty. In their breach-of-contract claim, Plaintiffs allege that Concorde owed a contractual duty to provide remedial training. (Id. ¶¶ 110-11.) That contractual duty cannot serve as the basis of Plaintiffs' negligence claim. Where "the only source of duty between a particular plaintiff and defendant is their contract

with each other, then a breach of that duty, without more, ordinarily will not support a negligence action." Thomas & Assocs., 2003 WL 21302974, at *6.

Plaintiffs do not plausibly allege that Concorde breached a non-contractual duty to provide remedial training. In their response to the Motion to Dismiss, they assert only that "the Court [has not] made any determination as to the source of [Concorde's] duties to Plaintiffs, and indeed, Plaintiffs' allegations of the duties owed by [Concorde] are not 'identical' to the breach of contract claim." (ECF No. 41 at 28.) That response does not identify the source of Concorde's alleged duty to provide remedial training. Plaintiffs do not adequately plead the duty element of their negligence claim. See Riddle v. Lowe's Home Ctrs., Inc., 802 F. Supp. 2d 900, 905-06 (M.D. Tenn. 2011) (dismissing negligence claim where plaintiff "cite[d] no controlling or even persuasive case law that would impute an affirmative duty on Defendant to provide assistance to its customers when loading merchandise"); Johnson v. City of Memphis, No. 06-cv-2052, 2007 WL 9706343, at *10-11 (W.D. Tenn. Mar. 19, 2007) (dismissing negligence claim based on officer's use of deadly force against plaintiff's spouse where plaintiff "fail[ed] to state the duty of care allegedly owed"); Calipari v. Powertel, Inc., 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002) (dismissing negligence claim based on

102

defendants' alleged failure to pay proceeds to plaintiff pursuant to an endorsement agreement where "plaintiffs [did] not allege[] that defendants owed any duty outside of the contractual relationship").

Plaintiffs do not plausibly allege that Concorde owed them a non-contractual duty to "provide reasonable and adequate remedial training to allow [them] . . . to sit for and pass the RHIT exam within a reasonable time." (ECF No. 23 ¶ 118.) Plaintiffs fail to state a negligence claim for which relief can be granted. Plaintiffs' negligence claim is DISMISSED.

## V.   Conclusion

For the foregoing reasons, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion to Dismiss Plaintiffs' TCPA, negligent misrepresentation, and negligence claims (Counts 2, 3, and 6) is GRANTED. Plaintiffs' TCPA, negligent misrepresentation, and negligence claims are DISMISSED. The Motion to Dismiss Plaintiffs' fraud, promissory estoppel, breach-of-contract, and unjust enrichment claims (Counts 1, 4, 5, and 7) is DENIED.

So ordered this 25th day of June, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE